**UNITED STATES of America, Appellant,**

v.

**Nandkishore Terry ARJOON,
Defendant–Appellee.**

**No. 1007, Docket 91–1654.**

United States Court of Appeals,
Second Circuit.

Argued March 4, 1992.

Decided May 18, 1992.

Abby Meiselman, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., Michele Hirshman, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellant.

John M. Leventhal, New York City (Michelle Epstein, Rosenthal, Vallario, Leventhal & Coffinas, New York City, of counsel), for defendant-appellee.

Before: KEARSE and ALTIMARI, Circuit Judges, and TELESCA, District Judge.[*]

ALTIMARI, Circuit Judge:

The United States appeals from the sentence imposed on resentencing of defendant-appellee Nandkishore Terry Arjoon by the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*), following Arjoon's conviction for embezzlement after entering a plea of guilty. In resentencing Arjoon, the district judge departed downward from the specified range in the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The district court justified its downward departure on Arjoon's return of a portion of the stolen property, and on a perceived unfair disparity between Arjoon's Guidelines-mandated original sentence and a lower Guidelines sentence imposed by the court on a defendant in an unrelated case for a crime that the court believed was more serious than Arjoon's.

On appeal the government contends that the district court lacked the authority to resentence Arjoon. The government further alleges that in resentencing Arjoon, the district court erred in basing its departure on either: (1) the perceived disparity in the sentences imposed on Arjoon and on a defendant in an unrelated case; or (2) Arjoon's return of a portion of the stolen property. For the reasons set forth below, we reverse and remand for resentencing.

## BACKGROUND

From June 1988 to October 1990, Arjoon worked in the loan processing department of The Bank of New York ("Bank"). On December 4, 1989, Arjoon used a computer terminal to wire transfer 5,000 shares of IBM stock, which was held by the Bank as collateral for a loan, to Arjoon's personal account. The market value of the stock at the time of the transfer was approximately $489,000. Arjoon then sold 3,000 shares of the stock and used the proceeds to play the stock market. According to Arjoon, he immediately incurred losses in this venture. Two months later Arjoon returned the unsold 2,000 shares via electronic transfer. In an attempt to recoup the Bank's money, Arjoon continued to play the market throughout 1990. Ultimately unsuccessful

* The Honorable Michael A. Telesca, *Chief Judge* of the United States District Court for the Western District of New York, sitting by designation.

in his efforts, Arjoon confessed his crime to Bank officials in September 1990, shortly before the Bank was to return the stock to its client. Thereafter, Arjoon returned $51,000 to the Bank, which was all that remained of the proceeds of the stock he had liquidated.

Arjoon was arrested and charged with one count of embezzlement in violation of 18 U.S.C. § 646. Arjoon pled guilty. In its Presentence Report ("PSR"), the Probation Department calculated the Bank's total loss as a result of Arjoon's embezzlement to be $489,000. This amount of loss fell between the $350,000 and $500,000 range specified by the Guidelines, and thereby resulted in a base offense level of 15. *See* U.S.S.G. § 2B1.1. Arjoon had no prior criminal record, and, therefore, was placed in a Criminal History I category. In addition, the PSR recommended that Arjoon receive a two-point downward adjustment for acceptance of responsibility resulting in an offense level of 13. *See* U.S.S.G. § 3E1.1. These PSR calculations yielded a sentencing range of 12 to 18 months.

In a presentence opinion dated July 22, 1991, the district court rejected the Probation Department's proposed offense level of 13. Because Arjoon had returned 2,000 shares of stock, worth approximately $200,000, before the Bank learned that he had embezzled it, the court determined that the Bank's loss was not $489,000 but was less than $300,000. This reduced amount resulted in an adjusted offense level of 12, and yielded a sentencing range of 10 to 16 months.

At sentencing, Arjoon requested a downward departure from the Guidelines, offering as reasons his small physical stature, which might result in a threat to his safety in prison, his extreme contrition, and his attempts to recoup and return the Bank's money. Although the district court indicated that it did not wish to sentence Arjoon within the applicable Guidelines' range, it concluded that the reasons offered by Arjoon provided no basis for departure. The district court sentenced Arjoon to 12 months imprisonment.

One week later, at a conference convened by the district court, the court vacated its original sentence *sua sponte*, and without prior notice of its intention to depart downward, reduced Arjoon's sentence to four months imprisonment, two of which could be served in a halfway house. In justifying this departure, the district court noted that on the same day that Arjoon had been sentenced the court had imposed a milder Guidelines-mandated sentence on an unrelated defendant who had pled guilty to gun trafficking, which the court viewed as a far more serious offense than Arjoon's embezzlement. According to the district court, the reason for this disparity is that in Arjoon's case, the Sentencing Guidelines did not adequately integrate the factors to be considered in imposing a sentence, as set forth in 18 U.S.C. § 3553(a)(2), such as the seriousness of the offense and the need to ensure adequate deterrence.

Subsequently, the government moved to vacate the second sentence, arguing that: (1) the district court had improperly failed to notify the parties of its intention to depart downward; (2) the district court had no authority to resentence Arjoon because there was no error in the original sentence; and (3) the factors relied upon by the district court did not justify a downward departure. The district court granted the government's motion, finding that it had failed to give proper notice of its intent to depart downward. However, on October 9, 1991, after giving the government proper notice and over the government's objection, the district court imposed a sentence identical to the recently vacated second sentence. Accordingly, the district court sentenced Arjoon to four months imprisonment, two of which could be served in a halfway house, to be followed by two years supervised release, with the special condition that Arjoon make restitution and notify his present employer of his conviction.

The government now appeals to challenge the propriety of this sentence.

## DISCUSSION

### I. *The District Court's Authority To Resentence*

Under the Sentencing Guidelines, district courts have retained the pre–Guide-

lines power to correct their own obvious errors in sentencing. *United States v. Uccio,* 917 F.2d 80, 84 (2d Cir.1990). The rationale for this power is to avoid the waste of judicial resources that would ensue if an appeal and remand were always required in order to impose the correct sentence. *Id.* The power to correct errors in sentencing does not, however, extend to a situation where the district judge "simply changes his [or her] mind about the sentence." *United States v. Cook,* 890 F.2d 672, 675 (4th Cir.1989). According to the government, the district judge did not resentence Arjoon to correct an obvious error made in calculating the original sentence, but he did so because he had simply changed his mind as to the appropriate sentence to impose.

■ The power to correct sentencing errors has been upheld in only a limited number of cases where the error was "obvious," i.e., where egregious mistakes were made. *See, e.g., United States v. Uccio,* 917 F.2d at 85 (district court erroneously sentenced defendant to concurrent terms of imprisonment rather than consecutive terms as mandated by the Sentencing Guidelines); *United States v. Rico,* 902 F.2d 1065, 1069 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990) (district court mistakenly imposed a sentence different from the one to which the parties had agreed and where the judge had intended to abide by the agreement). Unlike *Uccio* or *Rico,* the second sentencing proceeding in the instant case was not convened to discuss the belated discovery of an inadvertent error in the sentencing process. Rather, as the district court candidly explained, it was distressed by the fact that the Sentencing Guidelines prescribed a lower sentencing range for a gun-trafficker than for Arjoon, an embezzler. This plainly does not constitute the kind of "obvious error" which the district court has power to remedy, but instead constitutes a change of heart.

Accordingly, we hold that the district court was without authority to alter its initial sentence. However, assuming the district court had the authority to resen-

tence Arjoon, we next consider the propriety of the district court's downward departure.

## II. *The Downward Departure*

In resentencing Arjoon, the district court departed from the applicable Guidelines range because it found that the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2) were not adequately taken into consideration. Specifically, as noted above, the district court believed there was an unwarranted disparity between the sentencing range applicable to Arjoon and that applicable to a defendant convicted in an unrelated gun trafficking case. In addition, the district court cited Arjoon's return of a portion of the stolen property as a "circumstance" that was not adequately considered by the Sentencing Commission in formulating the Guidelines. The government contends that neither of the grounds relied on by the district court in its downward departure warranted a "result in a sentence different from that described." 18 U.S.C. § 3553(b). We agree.

■ A departure from the Sentencing Guidelines is warranted where there exists "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0; *United States v. Joyner,* 924 F.2d 454, 459 (2d Cir.1991). We review *de novo* the district court's determination that particular factors, such as the partial return of stolen property and the disparity of sentences imposed upon unrelated defendants for unrelated crimes, were not adequately considered by the Sentencing Commission so as to warrant a departure. *See, e.g., Joyner,* 924 F.2d at 459; *United States v. Jagmohan,* 909 F.2d 61, 64 (2d Cir.1990).

The district court's first reason for departure was that Arjoon's sentence seemed too harsh when compared to the sentence imposed upon a defendant for an unrelated gun trafficking offense. One of the principal purposes of the Sentencing Commission was to establish policies and practices that

avoided "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct ..." 28 U.S.C. § 991(b)(1)(B); *see also Joyner*, 924 F.2d at 460. A system was therefore established to meet this objective by prescribing appropriate sentencing ranges based on factors concerning an offense and an offender. As *Joyner* made clear, while "[a]n applicable guideline range may seem harsh ..., it is the same range applicable throughout the country for all offenders with the same combination of offense conduct and prior record." *Id.*

■ Mindful of this objective of sentencing conformity, we held in *Joyner* that a defendant "should not be favored, compared to all those similarly situated defendants, simply because his applicable sentencing range is not as distant from that of his co-defendant as the sentencing judge thinks appropriate." *Id.* at 461. Similarly, in a case virtually identical to the present one, the Eighth Circuit squarely held that a perceived disparity in sentences applicable to unrelated defendants convicted of unrelated offenses is an improper basis for departure. *See United States v. Prestemon*, 929 F.2d 1275, 1278 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 220, 116 L.Ed.2d 178 (1991). We find the reasoning of *Joyner* and *Prestemon* persuasive and hold that the district court's reliance on a perceived sentencing disparity between Arjoon and an unrelated defendant convicted of a different crime was not relevant to calculating Arjoon's sentence under the Guidelines and constituted an improper ground for departure.

■ The district court's second ground for the departure taken here—that the Sentencing Guidelines fail to provide for a reduction in the offense level for a defendant who returns stolen property—is equally unavailing. Contrary to the district court's conclusion, the Sentencing Guidelines do provide for a reduction in the offense level of a defendant who returns a portion of the proceeds he stole. Application Note 1(b) to Section 3E1.1, which provides for a two-level reduction for "acceptance of responsibility," expressly directs a sentencing judge to consider whether the defendant made restitution prior to the adjudication of guilt in determining whether such an adjustment is appropriate. Consequently, it is clear that the Sentencing Commission adequately considered restitution as a mitigating circumstance when it formulated the Sentencing Guidelines. *See, e.g., United States v. Brewer*, 899 F.2d 503, 509 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990) ("the factor of restitution and remorse was considered under [Section 3E1.1 of] the guidelines").

Accordingly, because Arjoon received the two-level reduction in his base offense level for acceptance of responsibility, he already had received credit for returning a portion of the stolen property; Arjoon's voluntary repayment of embezzled funds, therefore, did not constitute an "unusual circumstance[ ]" which is "present to a degree substantially in excess of that which is ordinarily involved." U.S.S.G. § 5K2.0. *See, e.g., United States v. Carey*, 895 F.2d 318, 323 (7th Cir.1990) (holding that a downward departure based on restitution was unreasonable because defendant had already been credited for acceptance of responsibility under U.S.S.G. § 3E1.1). The district court's resentencing of Arjoon based on Arjoon's partial restitution, therefore, constituted an improper downward departure.

III. *The Definition of Loss*

In facilitating the resentencing of Arjoon, we next address whether the district court properly calculated the loss suffered by the Bank as a result of Arjoon's embezzlement. In imposing Arjoon's original sentence, the district court rejected the Probation Department's calculation of an offense level of 13, which was based on the entire value of the stock at the time it was stolen, because Arjoon had returned 2,000 shares of stock before the Bank became aware that he had embezzled it. In ascertaining the Bank's loss, the district court subtracted the value of the shares Arjoon returned, which resulted in an adjusted offense level of 12. The government argues

that the court clearly erred in so doing. We agree.

 Application Note 2 to Section 2B1.1 of the Sentencing Guidelines, which concerns embezzlement, defines "loss" as "the value of the property taken, damaged, or destroyed." "Loss" is, therefore, not the ultimate harm suffered by the victim, but is rather the value of what was taken. *See, e.g., United States v. Brach*, 942 F.2d 141, 143 (2d Cir.1991). Consequently, "[u]nder the Guidelines, 'loss' includes the value of all property taken, even though all or part of it was returned." *Id.* It is for this reason that we conclude that the district court improperly subtracted the value of the stock returned. The appropriate figure in determining Arjoon's sentence was the $489,000 calculated by the Probation Department—the value of the stock that Arjoon originally stole.

## CONCLUSION

Based on the foregoing, we reverse and remand this case for further sentencing proceedings consistent with the Sentencing Guidelines and this opinion.