**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raymond Joseph LOPEZ,
Defendant–Appellant.**

**No. 93–1254.**

United States Court of Appeals,
Fifth Circuit.

July 5, 1994.

Raymond Joseph Lopez, pro se.

Jill Bindler, Asst. Federal Public Defender, Ira Kirkendoll, Federal Public Defender, Dallas, TX, for appellant.

Rose L. Romero, Asst. U.S. Atty., Richard Stephens, U.S. Atty., Dallas, TX, for appellee.

Before WISDOM and JONES, Circuit Judges, and FITZWATER,* District Judge.

PER CURIAM:

This appeal from a judgment of the district court resentencing a defendant who had previously been granted a downward departure for substantial assistance, but who thereafter refused to testify for the government at the trial of his codefendants, presents the question whether the district court had authority to modify the first sentence. Because we hold that none of the bases permitted by 18 U.S.C. § 3582(c) applies in this case, we reverse and remand for reinstatement of the original sentence.

I

Defendant Raymond J. Lopez ("Lopez") pleaded guilty to one count of a 61–count multi-defendant indictment charging him with a violation of 21 U.S.C. § 841(a)(1), conspiracy to possess with intent to distribute and distribution of five kilograms or more of cocaine; conspiracy to possess with intent to distribute and distribution of 50 grams or more of crack cocaine; and conspiracy to possess with intent to distribute and distribution of 100 kilograms or more of marihuana. Lopez entered the plea pursuant to a written plea agreement that provided, in pertinent part, that Lopez would "cooperate with the Government by giving truthful and complete information and/or testimony concerning his participation in and knowledge of criminal activities." The agreement also stated that if the government "deem[ed] any cooperation provided by [Lopez] as rising to that of 'substantial assistance' the government agree[d] to file a 5K1.1 Motion for Downward Departure."

Lopez entered his guilty plea on July 31, 1992. The government filed a written motion for downward departure pursuant to U.S.S.G. § 5K1.1. On December 4, 1992 the district court convened a sentencing hearing. The court accepted the presentence report after sustaining an objection to a two-level weapon enhancement and awarding an additional one level decrease for acceptance of responsibility. As adjusted pursuant to rulings by the district court, the sentencing range was 188 to 235 months, based upon a total offense level of 36 and a criminal history category of I. The district court granted the government's motion for downward departure, departed downward six levels, and within the new range of 97 to 121 months, imposed a custody sentence of 121 months.[1] The district judge determined that a six-level departure was appropriate, notwithstanding the greater reduction for which Lopez's counsel argued, and stated:

> I want to leave it open for the Government to file another Motion for Downward Departure if they agree. If there's additional assistance, or if there are additional factors that the Government thinks should warrant a downward departure, then I will take those into consideration at a later time. So I want Mr. Lopez to understand that that is still available.

In imposing a 121–month sentence, the judge noted that he had "tak[en] into consideration the specific cooperation in the two specific matters that I've mentioned, not additional matters, and I think that sentence is appropriate subject to review again when I get additional information about the other Defendants."

On February 1, 1993 the government proceeded to trial against six of the codefend-

---

* District Judge of the Northern District of Texas, sitting by designation.

1. The district court also sentenced Lopez to a period of supervised release of five years, imposed a fine of $5,000, and ordered the defendant to pay the mandatory special assessment. These portions of the sentence did not change on resentencing, and we do not address them further.

ants indicted with Lopez. Pursuant to the plea agreement, the government expected Lopez to testify, but he refused. On February 19, 1993 the government filed a motion asking the district court to resentence Lopez based upon his refusal to testify, which the government contended had caused it to significantly alter its trial strategy. The government advised the court that had it known Lopez would decline to testify, it would not have moved for a downward departure at the time of sentencing. The government urged the court to resentence Lopez within the range of 188 to 235 months, "as if there had been no motion for downward departure."

The district court granted the motion and convened a resentencing hearing on March 12, 1993. The government argued on the basis of *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), that the court could recall Lopez and increase his sentence so long as he had not begun to serve the sentence because "[s]uch resentencing does not violate any double jeopardy principles." The government also relied on this court's decision in *United States v. Crawford*, 769 F.2d 253 (5th Cir. 1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986), pointed out that Lopez had not yet begun to serve his sentence, and urged that it would "undermine the guidelines at this point for [Lopez] to receive any sort of a motion for substantial assistance because [he] simply doesn't meet the criteria for that."

The district court agreed with the government that there were no double jeopardy problems because Lopez was being resentenced before he actually started serving his sentence. After considering testimony and argument concerning the circumstances underlying Lopez's refusal to testify, the court determined that it should not have given Lopez a six-level decrease for substantial assistance "and that it was a mistake based upon the fact that [Lopez] was going to

cooperate and that he was going to testify." Because the court had decreased the total offense level six levels based on the assumption that Lopez would cooperate, and because he had not testified, the court held that Lopez "should not receive the 6 levels." Based upon the original guideline range of 188 to 235 months, the court sentenced Lopez to a period of imprisonment of 205 months. In so doing, the court stated that it had sentenced him at mid-range "because the Defendant has provided some assistance, and I think it's appropriate for me to go to the mid-range to recognize that assistance."

From the district court's second sentence, Lopez brings this appeal, asking that we vacate the second sentence and reinstate the first sentence of 121 months.[2]

## II

Lopez seeks reinstatement of his first sentence on the single ground that the district court lacked jurisdiction to impose the second sentence. He maintains that the district court essentially reconsidered its first sentence in a post-sentencing context, or effectively postponed a ruling on the government's § 5K1.1 motion, acting without jurisdiction in either event.

The government relies before us on a somewhat expanded version of its *DiFrancesco* argument. According to the government, because Lopez had not yet begun to serve the sentence originally imposed by the district court, the court could lawfully resentence Lopez based upon *DiFrancesco's* recognition of "the established practice in the federal courts that the sentencing judge may recall the defendant and increase his sentence, at least ... so long as he has not yet begun to serve that sentence." 449 U.S. at 134, 101 S.Ct. at 436.

For reasons we will later explain, we hold in this guideline case that the government's

---

**2.** In his brief, Lopez asks this court to reinstate the sentence of 121 months, *see* Appellant Br. at 7, reinstate his original legal sentence, *id.* at 14, and reinstate his "original sentence of 97 months," *id.* at 15. In his reply brief, Lopez urges that the sentence of December 4, 1992—the original sentence—should be reinstated. *See* Appellant Rep.Br. at 6. Notwithstanding Lo-

pez's apparently erroneous request that we reinstate his "original sentence of 97 months," which in fact represents the bottom of the available range after the district court departed downward, we think Lopez is asking that we vacate his second sentence of 205 months and remand so that the district judge may reinstate the original sentence of 121 months.

reliance upon *DiFrancesco*, as well as the other authorities it cites, is misplaced. We conclude instead that the dispositive question is whether the district court possessed the requisite authority pursuant to 18 U.S.C. § 3582(c) to modify an imposed term of imprisonment.[3]

## A

When Congress enacted the Sentencing Reform Act of 1984 and put in place a system of uniform, determinate sentencing, it included explicit limitations on the authority of courts to modify a term of imprisonment once it had been imposed. Pursuant to 18 U.S.C. § 3582(c),

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
> > >
> > > (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
> >
> > (2) in the case of a defendant who has been sentenced to a term of imprisonment

based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

■ In the present case, neither the government nor Lopez has cited § 3582(c) to us on appeal. The district court did not identify at sentencing the basis on which it relied for its resentencing authority, except to agree with the government that no double jeopardy concerns were presented. From our review of the record, we can quickly eliminate § 3582(c)(1)(A) (permitting modification on motion of the Director of the Bureau of Prisons) and (c)(2) (allowing modification where defendant was sentenced on the basis of sentencing range that has subsequently been lowered) as statutory predicates. While we acknowledge the portion of subsection (c)(1)(B) that empowers a sentencing court to act where "expressly permitted by statute,"[4] no such proviso has been cited to us as authority for the resentencing. The only portion of § 3582(c) that remains to be considered is the component of subsection (c)(1)(B) that authorizes a sentencing court to act pursuant to Fed.R.Crim.P. 35. Accordingly, any power that the court below possessed to resentence Lopez must be found if at all in Rule 35.[5]

---

**3.** We prefer at this point to analyze § 3582(c) in terms of the district court's *authority* rather than its *jurisdiction*. Unlike our discussion *infra* at n. 8, where precedent dictates that we address the Fed.R.Crim.P. 35 component of § 3582(c) in jurisdictional terms, in the present context we are able to hold that the district court acted without authority. Neither our cases nor the outcome of this appeal suggests a different approach. We prefer not to speak in jurisdictional terms when the precedential effect of our decision could have unintended results in contexts that we may not foresee. Moreover, because § 3582(c) does not expressly address the jurisdiction of a court to modify an imposed term of imprisonment, we leave to the proper case the determination whether other constituent parts of § 3582(c)

should be analyzed as a limit on a district court's jurisdiction.

**4.** An example of such a statute is 28 U.S.C. § 2255. *See* Fed.R.Crim.P. 35 advisory committee's note ("The Committee's assumption is that a defendant detained pursuant to [a plainly illegal] sentence could seek relief under 28 U.S.C. § 2255.").

**5.** Although § 3582(c) does not refer to Fed. R.Crim.P. 36, we discern no intent on the part of Congress to preclude a court from correcting in a guideline case "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission." *See* Rule 36. We view § 3582(c) and

In its present form—which is the version applicable to Lopez's case—Rule 35 provides as follows:

(a) Correction of a Sentence on Remand. The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

(b) Reduction of Sentence for Changed Circumstances. The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court may consider a government motion to reduce a sentence made one year or more after imposition of the sentence where the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after imposition of sentence. The court's authority to reduce a sentence under this subsection includes the authority to reduce

such sentence to a level below that established by statute as a minimum sentence.

(c) Correction of Sentence by Sentencing Court. The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error.

Rule 35 thus empowers a district court to modify a sentence in the following instances. The court may correct a sentence on remand from a court of appeals, when it has been determined on appeal that the sentence was imposed in violation of law or as a result of an incorrect application of the sentencing guidelines, or was found to be unreasonable. Rule 35(a). Within seven days after the imposition of sentence, the court may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error. Rule 35(c). Finally, the court may reduce a sentence on the government's motion to reflect a defendant's subsequent, substantial assistance. Rule 35(b).

As with the provisos of § 3582(c), it is a facile task to exclude most subsections of Rule 35 as authority for Lopez's second sentence. The district court did not resentence Lopez following a remand from the court of appeals, and the government did not move the court to reduce defendant's sentence (it asked for the opposite). Therefore, neither Rule 35(a) nor 35(b) has application in the present case. We turn then to Rule 35(c).

### B

"Prior to November 1, 1987, Rule 35 of the Federal Rules of Criminal Procedure allowed a sentencing judge substantial latitude to

Rule 36 as entirely consistent because Rule 36 does not encompass sentence modifications in the sense contemplated by § 3582(c). While we note that at least one court has broadly construed Rule 36 in a guideline sentence context, *see United States v. Crecelius,* 751 F.Supp. 1035, 1037 (D.R.I.1990) (holding that Rule 36 empowered court to change sentence from 12 months to 12 months plus one day because court had committed a "clerical error" when it intended to sentence defendant to the minimum sentence provided for in the guidelines, and amended sentence was actually a lesser sentence because it made the defendant eligible to receive good time credit), *aff'd,* 946 F.2d 880 (1st Cir.1991) (table),

we think the better view is that "clerical mistakes" and "errors in the record," within the meaning of Rule 36, are not equivalent to modifications to the orally pronounced sentence. *See United States v. Daddino,* 5 F.3d 262, 265 (7th Cir.1993) (per curiam) (omission of costs of incarceration and supervision from defendant's sentence was not correctable pursuant to Rule 36); *United States v. Fraley,* 988 F.2d 4, 5–6 (4th Cir.1993) (district court's decision to modify ten-month custody sentence to five months of imprisonment and five months of community confinement not authorized pursuant to Rule 36 as a "clerical error").

amend a sentence after the public sentencing hearing." *United States v. Cook,* 890 F.2d 672, 674 (4th Cir.1989).[6] "Congress amended Rule 35 as part of the Sentencing Reform Act of 1984." *Id.* (citing Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 215(b), 98 Stat. 1837, 2015). "The underlying purpose was to impose on the new sentencing system a requirement that the sentence imposed in the public forum during the sentencing hearing would remain constant, immune from later modification." *Id.* at 674–75 (footnote omitted).

The guideline sentence version of Rule 35 that took effect on November 1, 1987 provided as follows:

(a) Correction of a Sentence on Remand. The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

(b) Correction of Sentence for Changed Circumstances. The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

Read literally, it left the district court with no authority to alter a sentence except on remand from the court of appeals or in response to a government motion. *See United States v. Fraley,* 988 F.2d 4, 6 (4th Cir.1993) ("[U]nder the literal language of Rule 35 as adopted in 1984, district courts had no authority to modify a sentence either *sua sponte* or upon motion by the defendant."); *United States v. Corey,* 999 F.2d 493, 495 (10th Cir.) ("On its face, the amended rule authorized the correction of a sentence only on remand … and the reduction of a sentence only upon motion by the government 'to reflect a defendant's subsequent, substantial assistance in the investigation o[r] prosecution of another person who has committed an offense.' "), *cert. denied,* —— U.S. ——, 114 S.Ct. 574, 126 L.Ed.2d 473 (1993). This ostensibly restrictive scheme prompted at least two circuits, *see Cook,* 890 F.2d 672, and *United States v. Rico,* 902 F.2d 1065 (2d Cir.), *cert. denied,* 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990), to hold that district courts had inherent power under the guidelines, notwithstanding Rule 35, to reconsider a sentence during the period in which any party could file a notice of appeal. *See Corey,* 999 F.2d at 495 ("After the amended rule took effect, however, several courts of appeals held that the district courts retained the 'inherent' authority to correct obvious sentencing errors within the time fixed for filing an appeal." (citing *Rico* and *Cook* )). Both *Cook* and *Rico* addressed whether Rule 35(a)'s apparently exclusive method of appeal and remand was in fact the

---

**6.** The preguideline version of Rule 35, which still applies today to preguideline cases, provides:

(a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after

receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

sole procedure by which a district court could correct an illegal sentence. *See Cook,* 890 F.2d at 674 (defendant contended Rule 35(a) allowed district court to amend a sentence only by correcting the sentence on remand, and that district court had no power to amend the sentence unless one of the parties appealed and circuit court determined one of the bases for reversal prescribed by law was met); *Rico,* 902 F.2d at 1066 (defendant argued that Rule 35(a), as amended by Sentencing Reform Act of 1984, stripped district court of its power to correct a sentence supposedly imposed in an illegal manner and that the government's only recourse was to appeal the sentence).

In *Cook* the Fourth Circuit recognized that the district court had inherent power "to correct an acknowledged and obvious mistake" in a guideline sentence "during that period of time in which either party may file a notice of appeal." 890 F.2d at 675. "After that time ... the sentence has become final, and the district court lacks any authority to modify it." *Id.* The *Cook* holding was "a very narrow one." *Id.* The panel emphasized that "[t]he power of a district court to amend a sentence does not extend to a situation where the district judge simply changes his mind about the sentence. Nor should this be interpreted as an attempt to reenact former Rule 35 by judicial edict." *Id. See Fraley,* 988 F.2d at 6 (*Cook* holding was "quite narrow" and does not extend to situation where district court simply changes its mind).

In *Rico* the Second Circuit followed the reasoning of *Cook,* holding the district court had properly corrected an illegal sentence "well within the time for either party to file a notice of appeal." 902 F.2d at 1068. The court noted that "[i]t would have been a waste of judicial resources to require an appeal and remand in this case in order to

impose the same sentence that should have been imposed in any event." *Id.* The panel held "the district court has the inherent power to correct the sentence within the time fixed for filing a notice of appeal." *Id.*

In 1991 Rule 35 was again amended and Rule 35(c) was added to the revised Rule.[7] Rule 35(c) "is intended to adopt, in part, a suggestion from the Federal Courts Study Committee." Fed.R.Crim.P. 35 advisory committee's note. The Committee recommended "that Rule 35 be amended to recognize explicitly the ability of the sentencing court to correct a sentence imposed as a result of an obvious arithmetical, technical or other clear error, if the error is discovered shortly after the sentence is imposed." *Id.* The Advisory Committee observed that at least the Fourth and Second Circuits, in *Cook* and *Rico,* had held that trial courts had inherent authority, notwithstanding the repeal of former Rule 35(a) by the Sentencing Reform Act of 1984, "to correct a sentence within the time allowed for sentence appeal by any party under 18 U.S.C. 3742." *Id.* According to the Committee, Rule 35(c) "in effect codifies the result in those two cases but provides a more stringent time requirement." *Id.; see United States v. Fahm,* 13 F.3d 447, 453–54 (1st Cir.1994) ("The 1991 amendment to Rule 35(c) was intended to codify the result reached in *Rico* and *Cook* but requires as well that the sentencing court *act within* the time frame prescribed in the rule").

### C

We now consider whether the district court was authorized by Rule 35(c) to resentence Lopez.

 Perhaps the most obvious impediment to reliance upon Rule 35(c) is its explicit time limit. Rule 35(c) imposes a seven-day peri-

---

7. The 1991 amendment also revised Rule 35(b). The title of subsection (b) was changed from *"Correction* of Sentence for Changed Circumstances" to *"Reduction* of Sentence for Changed Circumstances" (emphasis added). This amendment was made "to reflect that there is a difference between correcting an illegal or improper sentence, as in subsection (a), and reducing an otherwise legal sentence for special reasons under subsection (b)." Fed.R.Crim.P. 35 advisory

committee's note. Rule 35(b) was also amended to relax the one-year time limit on government motions to lower a defendant's sentence to reflect subsequent, substantial assistance, by permitting the court to consider motions made one year or more after imposition of sentence "where the defendant's substantial assistance involve[d] information or evidence not known by the defendant until one year or more after imposition of sentence." *See* Rule 35(b).

od, which is jurisdictional.[8] *See Fahm,* 13 F.3d at 453 ("The relevant case law likewise compels the conclusion that the district court lacked jurisdiction to correct its original sentence beyond the limitation period prescribed in Rule 35(c)."); *United States v. Morillo,* 8 F.3d 864, 869 (1st Cir.1993) (Rule 35(c)'s seven-day interval is an absolute limitation). The Advisory Committee proposed this limitation because it "believed that the time for correcting such errors should be narrowed within the time for appealing the sentence to reduce the likelihood of jurisdictional questions in the event of an appeal and to provide the parties with an opportunity to address the court's correction of the sentence, or lack thereof, in any appeal of the sentence." Fed. R.Crim.P. 35 advisory committee's note. In the Committee's view, "[a] shorter period of time would also reduce the likelihood of abuse of the rule by limiting its application to acknowledged and obvious errors in sentencing." *Id.*

▪ The Federal Courts Study Committee had proposed that modification of a sentence be permitted within 120 days of sentencing, based upon new factual information not known to the defendant at the time of sentencing. *See id.* The Advisory Committee rejected this proposal because *inter alia* it "believed that such a change would inject into Rule 35 a degree of postsentencing discretion which would raise doubts about the finality of determinate sentencing that Congress attempted to resolve by eliminating former Rule 35(a)." *Id.* "The restrictive time period was adopted, in part, to limit abuses of the rule." *Fraley,* 988 F.2d at 7 (citing Fed.R.Crim.P. 35 advisory committee's note). A formulation that permitted the sentencing judge to modify a sentence based upon new information "would defeat Congress' intent to provide finality in sentencing and would create an unacceptably large

realm of postsentencing discretion." *Id.; see United States v. Daddino,* 5 F.3d 262, 265 (7th Cir.1993) (per curiam) ("Rule 35(c), however, only applies to those errors that are brought to the attention of a district court within seven days of the imposition of a sentence. Because the district court's attempt to correct [the defendant's] sentence came two months after it was imposed, it falls well outside of the limited authority provided in Rule 35(c)." (footnote omitted)).

In *Fahm* the district court sentenced the defendant to a prison term of 20 months. 13 F.3d at 449. Approximately three months later, the district court resentenced the defendant to a period of imprisonment of 21 months. *Id.* At the first sentencing hearing the district judge imposed a sentence based upon an upward departure from the applicable guideline range. *Id.* at 449, 452. The court allowed defense counsel a period of two weeks to object to the departure ruling. *Id.* at 452. The court then convened a second sentencing hearing. At this hearing the court declined to reconsider its decision to depart, but raised *sua sponte* an oversight in the guideline calculations that resulted in a two-level increase to the total offense level. *Id.* The court overruled the defendant's objection to the court's jurisdiction (the objection did not refer explicitly to Rule 35(c)'s seven-day limitation period) and sentenced the defendant to a period of imprisonment of 21 months. *Id.* at 452–53.

The defendant appealed the second sentence on the ground that the district court lacked jurisdiction to increase the sentence originally imposed. *Id.* at 453. The First Circuit agreed. Addressing the question "whether the original sentence was subject to reconsideration by the district court ... well beyond the time allowed under Rule 35(c)," *id.,* the court held "the district court lacked

---

**8.** We join the First Circuit's conclusion that Rule 35(c) imposes a jurisdictional time limit. We have previously held that the preguideline version of Rule 35(b) is jurisdictional. *See In re United States,* 900 F.2d 800, 803 (5th Cir.) (Jones, J.) (citing *United States v. Addonizio,* 442 U.S. 178, 189, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979); *United States v. Counter,* 661 F.2d 374, 376 (5th Cir.1981)), *cert. denied,* 498 U.S. 905, 111 S.Ct. 271, 112 L.Ed.2d 227 (1990). We

granted a writ of mandamus in that case, holding that the district court was "without jurisdiction to reduce a defendant's sentence outside the limits imposed by Rule 35." *Id.* We see no reason to alter our analysis in the context of the guideline version of Rule 35. We therefore agree with the First Circuit that the seven-day limit in Rule 35(c) constitutes a jurisdictional restraint on the district court's power to alter a sentence.

jurisdiction to correct its original sentence beyond the limitation period prescribed in Rule 35(c)." *Id.* The panel also rejected the government's alternative argument that the district court possessed inherent power to reconsider the sentence after the seven-day period in order to correct an obvious oversight. *Id.* The court held that the 1991 amendment to Rule 35(c) "requires ... that the sentencing court *act within* the time frame prescribed in the rule." *Id.* at 453–54 & 454 n. 7 (even though defendant orally requested reconsideration within the limitation period, court was required to act on the request within the period). "Since the narrow window of opportunity allowed under Rule 35(c) closed long before the district court reconsidered its original sentence, and the court lacked inherent power to do so, the original sentence must be reinstated." *Id.* at 454.

In the present case the district court sentenced Lopez on December 4, 1992 and re-sentenced him on March 12, 1993. This occurred outside the seven-day window and the district court lacked jurisdiction to act pursuant to Rule 35(c).

■ We also reject any reliance on Rule 35(c) for a second reason. No party to this appeal contends that when the district court sentenced Lopez the first time, the court committed "arithmetical, technical, or other clear error." The judge stated at resentencing that it was a "mistake" to have credited Lopez with a downward departure based on the erroneous assumption that Lopez would cooperate and testify for the government. But this is not an error within the contemplation of Rule 35(c).[9] The Advisory Committee intended that the sentencing court's authority to act pursuant to Rule 35(c) would "be very narrow and ... extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a)." *See* Fed.R.Crim.P. 35 advisory committee's note; *United States*

*v. Portin,* 20 F.3d 1028, 1029 (9th Cir.1994) (per curiam) (quoting Fed.R.Crim.P. 35 advisory committee's note). "Thus, the addition of subsection (c) to Rule 35 demonstrates that district courts are to have only limited authority to correct sentences ... and Rule 35(c) fully defines the scope of that authority." *Fraley,* 988 F.2d at 7; *see United States v. Ross,* 9 F.3d 1182, 1188 (7th Cir. 1993) ("This new version of [Rule 35] adapts the earlier scheme to the demands of the sentencing guidelines structure while preserving, albeit on a very constricted scale, the former authority of the district court, grounded in rule and, at least prior to the rules, inherent power, to correct errors in sentences." (citing Fed.R.Crim.P. 35(c) advisory committee's note)). Significantly, Rule 35(c)

> is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

Fed.R.Crim.P. 35 advisory committee's note; *see Portin,* 20 F.3d at 1029 (quoting Fed. R.Crim.P. 35 advisory committee's note); *United States v. Strozier,* 940 F.2d 985, 987 (6th Cir.1991) (power of district court to amend a sentence extends only to a situation where the district judge has misapplied the guidelines, not to situations where he simply changes his mind about the sentence).

We agree with our sister circuits who have declined to uphold resentencings where no error was present in the first sentence.

In *Portin* the district court sentenced two defendants to a period of imprisonment of 33 months and imposed fines of $10,000 and $25,000. 20 F.3d at 1029. This violated the plea agreement, which the government and the defendants had entered into pursuant to Fed.R.Crim.P. 11(e)(1)(C). That Rule re-

---

**9.** Were we to uphold pursuant to Rule 35(c) the procedure followed in this case, we would countenance what is at least the functional equivalent of deferring until after sentencing a ruling on a

§ 5K1.1 motion for downward departure, which we have held to be error. *See United States v. Mitchell,* 964 F.2d 454, 461–62 (5th Cir.1992).

quired the court either to accept the agreement or permit the defendants to withdraw their guilty pleas. Defendants filed a motion—concurred in by the government—to correct the sentences. *Id.* The sentencing court conceded error and resentenced the defendants to 15–month prison terms. *Id.* The court also increased the fine amounts to $25,000 and $60,000. *Id.*

The Ninth Circuit vacated and remanded for resentencing. *Id.* at 1030. It held that the district court had exceeded its authority under Rule 35(c) when it increased the fines. *Id.* The panel cited the Advisory Committee's note to Rule 35(c) that provides that the Rule "authorizes the district court to correct obvious sentencing errors, but not to reconsider, to change its mind, or to reopen issues previously resolved under the guidelines, where there is no error." *Id.* Because "[n]either the defendants nor the government challenged the district court's original resolution of any issue relating to fines," there was no error in that regard for the sentencing court to correct. *Id.*

In *Fraley* the district judge sentenced a defendant to a period of imprisonment of ten months. 988 F.2d at 5. Several months after the defendant began to serve his sentence, he moved the court to reconsider the period of imprisonment imposed. *Id.* The district court treated the motion as one to correct the prior sentence, *id.,* and changed the sentence to five months of imprisonment followed by five months of community confinement. *Id.* On the government's appeal, the Fourth Circuit reversed, holding the sentencing court had no authority to alter a sentence where the court had "simply changed its mind." *Id.* at 7. "The court identified no error in [the defendant's] original sentence, and consequently it needed no correction." *Id.*

In *United States v. Arjoon,* 964 F.2d 167 (2d Cir.1992), the district judge reduced a defendant's sentence after concluding on the basis of an unrelated case that the sentence was unduly harsh. *Id.* at 169. The government appealed. The Second Circuit reversed the second sentence on the ground that the district court was without authority to alter its initial sentence. *Id.* at 170. The circuit

court held that the sentencing court lacked any power to change a sentence in the absence of error, and where the new sentence reflected the judge's change of heart. *See id.*

In sum, we find no basis in Rule 35(c), or in any other component of § 3582(c), to authorize Lopez's resentencing.

### D

We now turn to the government's arguments for affirmance.

■ We begin by rejecting the government's reliance upon *DiFrancesco.* In that case the Court upheld against a Fifth Amendment Double Jeopardy Clause challenge a provision in the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922, that permitted the government to appeal a sentence. 449 U.S. at 118–21, 101 S.Ct. at 427–29. The issue presented was whether the proviso that authorized the government to appeal violated the Double Jeopardy Clause. *Id.* at 120–21, 101 S.Ct. at 428–29. In holding that it did not, the Court addressed *inter alia* the fundamental distinctions between a defendant's expectation of finality in a sentence and an acquittal. *Id.* at 133–36, 101 S.Ct. at 435–37. The Court reviewed the history of sentencing from the time of the common law to the date of its opinion, noting "the established practice in the federal courts that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence." 449 U.S. at 134, 101 S.Ct. at 436.

We think it a sufficient answer to the government's reliance upon this statement from *DiFrancesco* to point out that the Court was addressing a constitutional issue, that Lopez does not challenge his second sentence on double jeopardy grounds, and that *DiFrancesco* recounted the established practice as of 1980, prior to enactment of the Sentencing Reform Act of 1984 and the promulgation of § 3582(c). *DiFrancesco* did not intend to enlarge prospectively the restrictions that Congress later placed on the district court's authority to modify guideline sentences.

While *DiFrancesco* would presumably immunize from a constitutional double jeopardy challenge a resentencing in a guideline case that results in a harsher sentence following an appeal taken by the government, *see Rico*, 902 F.2d at 1068–69, it did not purport to address a statutory limit on a sentencing court's authority that had not been enacted as of the time the Court referred to "the established practice in the federal courts."

Nor are we persuaded by the government's reliance upon *United States v. Earley*, 816 F.2d 1428 (10th Cir.1987) (en banc), or our decision in *Crawford*, 769 F.2d 253, both preguideline cases concerning illegal sentences or sentences illegally imposed, neither of which addresses § 3582(c) or Rule 35 in its guideline form.

The government's citation to *United States v. Smith*, 929 F.2d 1453 (10th Cir.), *cert. denied*, ⸺ U.S. ⸺, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991), is closer to the mark because *Smith* in fact addressed a guideline sentence. We need not decide, however, whether we would agree with the majority or dissent in *Smith* because that case was decided pursuant to the pre–1991 version of Rule 35(c).

In *Smith* the district judge orally pronounced sentence, apparently within minutes of doing so he detected what he deemed to be an error in his factual analysis of the relevant drug quantity (resulting in a six-level difference in the total offense level), and he immediately sought to return the defendant and his counsel to the courtroom. *Id.* at 1455–56. Neither was available, having departed from the courthouse. *Id.* at 1456. Seven days later, the sentencing judge convened a second sentencing hearing. *Id.* In the meantime, he did not reduce the orally-imposed sentence to a written judgment. *Id.* At the second hearing the court apparently was prepared to enter a new sentence based upon the additional drug quantity and, in turn, the higher total offense level. *Id.* When the defendant's counsel challenged the factual bases for attributing the additional

quantity to him, the sentencing hearing "was at that point continued for an evidentiary hearing on these issues." *Id.* Over one month later the district court conducted a hearing, held that the higher offense level applied, and resentenced the defendant to a period of imprisonment of 56 months, *id.* at 1456–57, rather than the 30–month sentence originally pronounced, *id.* at 1455.

The Tenth Circuit held the district court possessed the power to resentence the defendant. The majority agreed with the government's position that since the defendant had not yet commenced service of the first sentence, the district court "had the power to resentence him and correct its incorrect application of the guidelines." *Id.* at 1457. In the majority's view, the defendant not only was still under the jurisdiction of the courts, having not yet begun service of the sentence, but he had no legitimate expectation of finality of his original sentence because the sentence was appealable by the government and the time to appeal had not yet expired. *Id.*[10]

Accepting the Tenth Circuit's characterization of the sentencing judge's action as an attempt to "correct its incorrect application of the guidelines," *id.* at 1457, we can harmonize *Smith* with *Cook* and *Rico*, and distinguish it from our case. Under *Cook, Rico*, and like cases, a district court retained inherent authority under the 1987 version of Rule 35 to correct an acknowledged and obvious mistake in a guideline sentence during the period of time in which either party could file a notice of appeal. *Cook*, 890 F.2d at 675; *Rico*, 902 F.2d at 1068. As the *Smith* panel noted, when the district court resentenced the defendant, the government's appeal time had not expired. The *Smith* defendant was sentenced and resentenced prior to the December 1, 1991 effective date of Rule 35(c), which imposes a seven-day jurisdictional limitation on this authority. Therefore, even if *Smith* were binding precedent, the government's reliance upon it would fail on the basis of Rule 35(c)'s temporal constraint.

---

**10.** In the case before us, neither side contends the district judge incorrectly applied the guidelines at the first sentencing, the sentencing judge entered a written judgment on the sentence, no mention was made before either party's appeal time had expired that a different sentence was contemplated, and the new sentence was imposed after the appeal time had expired relative to the first sentence. The present appeal is therefore distinguishable from *Smith* on its facts.

## E

Given the sea-change that the guideline sentencing versions of Rule 35 have produced, we think it appropriate to add these observations.

We do not in this opinion purport to address exhaustively the contours of the district court's authority to correct a sentence pursuant to Rule 35(c). We neither suggest a limitation upon nor an enlargement of Rule 35(c)'s literal terms, nor do we determine what actions by a sentencing court will constitute corrections based upon "arithmetical, technical, or other clear error."

Furthermore, we think several viable avenues remain to the government, and to district judges, who seek to ensure that § 5K1.1 motions are not prematurely made or granted. First, the district court can postpone sentencing for a reasonable period of time in order to evaluate a defendants' substantial assistance, including his testimony at a subsequent trial. Rule 32(a)(1) dictates that a "[s]entence shall be imposed without unnecessary delay," but it also provides that "the court may, when there is a factor important to the sentencing determination that is not then capable of being resolved, postpone the imposition of sentence for a reasonable time until the factor is capable of being resolved." We think a defendant's substantial assistance is a factor that a district court may properly find is important to the sentencing determination and justifies postponement of the imposition of sentence. Second, if a delay in sentencing is unwarranted, and the defendant lacks sufficient time to provide substantial assistance prior to sentencing, the district court can account for post-sentencing substantial assistance pursuant to Rule 35(b), which is § 5K1.1's post-sentencing analog. Third, in appropriate cases the government may request a § 5K1.1 downward departure based upon the defendant's substantial assistance as of the date of sentencing and also move for Rule 35(b) relief based upon substantial assistance provided after the defendant is sentenced.

## III

The district court lacked authority to modify defendant's term of imprisonment. We therefore REVERSE the second sentence and REMAND to the district court to reinstate the first sentence.

REVERSED and REMANDED.