PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-2211

_____

D. C. Docket No. 95-42-CR-T-24B

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MYRA T. BALD, ROGER BALD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(January 14, 1998)**

Before HATCHETT, Chief Judge, EDMONDSON and COX, Circuit Judges.

# PER CURIAM:

**Defendants-appellants appeal sentences for conspiracy to**

**commit credit card and bank fraud, credit card fraud, and false**

declaration on a tax return. No reversible error has been shown; we affirm.

## Background & Facts

This case involves an employee who was entrusted with the credit cards of her employer. During a four-year period, Defendants Myra Bald, and her husband Roger Bald, used the credit cards to make unauthorized purchases in an amount greater than $500,000. Myra Bald also cashed checks by forging the signature of her employer's wife. Defendants were charged with conspiracy to commit credit card and bank fraud, credit card fraud, and false declaration on a tax return. The jury found the Defendants guilty on all counts in the indictment.

At sentencing, the amount of loss became an issue. Defendants claimed that two items should not be calculated in the amount of loss: (1) items purchased with the credit cards, but returned before

2

detection; and (2) checks which were cashed for, and used for the benefit of, the employer and his family ("the McGillicuddys"). At the final sentencing hearing, the district court included all challenged items in its loss calculation. This appeal followed.

## Discussion[1]

This case presents a question about the interpretation of the Sentencing Guidelines. In the light of the Guidelines, Defendants argue that the district court's calculation of the amount of loss ($528,727.53) was erroneous because it included $35,786.54 in

---

[1]Defendants raise many issues on this appeal. We conclude that all of these challenges lack merit: (1) the alleged Brady violation; (2) the exclusion of evidence obtained from computer diskettes; (3) the order of restitution; (4) the quashing of subpoenas; (5) the ineffective assistance of counsel claim; and (6) the exclusion of abortion testimony. We discuss only the loss calculation for sentencing.

merchandise that the Defendants returned to merchants before the wrongdoing was detected.[2]

The district court sentenced Defendants under the 1992 Sentencing Guidelines, which call for an increase of offense level by ten levels when the amount of loss is over $500,000.  U.S.S.G. § 2F1.1(b)(1)(K).  If the loss calculation did not include the credits for the returned merchandise, the total loss would be $492,940.99; and Defendants' offense level would be reduced by one level.  See U.S.S.G. § 2F1.1(b)(1)(J) (increase offense level by nine when loss is over $350,000, but less than $500,000).

---

[2]The Balds also claim that $40,335.37 in checks were cashed for, and used for the benefit of, the McGillicuddys and should not be included in the loss calculation.  In considering this argument, the district court found credible evidence existed that the checks in question were forged by Mrs. Bald and that Mrs. McGillicuddy's name was forged on the checks.  The court further pointed out that Mrs. McGillicuddy testified she had never given permission to Mrs. Bald to forge her name.  So, the district court found it "a leap of faith" to think that Mrs. Bald would have turned over the money to the McGillicuddys after having gone to the trouble of forging the checks in the first place.  This finding is a reasonable interpretation of the evidence and is not clearly erroneous.

Defendants sentenced under section 2F1.1 generally receive "an offense level increase based on the greater of: (1) the actual loss associated with a crime; or (2) the intended loss." United States v. Dominguez, 109 F.3d 675, 676 (11th Cir. 1997).  We must decide whether loss includes unauthorized credit card purchases that are returned for credit before detection.  We conclude that the answer is "yes:"  all the credit card charges made by the Balds should be included in the amount of actual loss.

Offenses involving fraud or deceit are covered under section 2F1.1 of the Sentencing Guidelines.  The commentary to this section states in part:  "[a]s in theft cases, loss is the value of the money, property, or services unlawfully taken . . . ."[3]

---

[3]In United States v. Arjoon, a defendant was charged with embezzlement of -- that is, the unlawful taking of -- shares of stock from the bank where he worked.  964 F.2d 167 (2d Cir. 1992).  Although Arjoon returned some of the shares before confessing his crime, the Second Circuit held that loss was "not the ultimate harm suffered by the victim, but [] the value of what was taken. . . . even though all or part of it was returned." Id. at 172 (internal quotation omitted).

5

U.S.S.G. § 2F1.1, applic. n. 7. In addition, section 2F1.1 incorporates the definition of loss discussed in the commentary to section 2B1.1, which covers larceny, embezzlement, and other forms of theft. See generally United States v. Saunders, No. 97-1098, (7th Cir. Nov. 18, 1997); United States v. Maurello, 76 F.3d 1304 (3d Cir. 1996). Under section 2B1.1, "'[l]oss' means the value of the property taken, damaged, or destroyed" and "includes any unauthorized charges made with stolen credit cards . . . ." U.S.S.G. § 2B1.1, applic. nn. 2 & 4 (emphasis added).[4]

Section 2B1.1's definition of loss applies here because, although the credit cards in this case were not stolen, misuse of

---

[4]Also, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, applic. n. 7 (emphasis added). In the circumstances of this case, actual loss is equal to intended loss. Cf. United States v. Ismoila, 100 F.3d 380 (5th Cir. 1996) ("intended loss" used where defendants endeavored to make charges in excess of the credit card limit).

a credit card entrusted to one's care is analogous to theft.[5] Defendants' fraud is like a theft because the Defendants "took" something of value (credit) without giving something of value in return. See United States v. Dickler, 64 F.3d 818, 825 (3d Cir. 1995).

The unauthorized use occurred at the moment of purchase, when the items were paid for with the McGillicuddys' credit cards. At that point the pertinent crime was complete, and an actual loss resulted. That Defendants later returned the merchandise obtained by using the credit cards is not important to the sum of unauthorized charges -- the credit card charges in this case already were "unauthorized charges" within the meaning of U.S.S.G. § 2B1.1.[6]

---

[5]The Sentencing Guidelines acknowledge that often "loss in a fraud case will be the same as in a theft case." U.S.S.G. § 2F1.1, applic. n. 7.

[6]Defendants claim that the calculation should be based on the net detriment to the victim; they cite United States v. Lavoie, 19 F.3d 1102 (6th Cir. 1994); United States v. Henderson, 19 F.3d

The Balds made all the credit card purchases. Pursuant to the Guidelines, the amount of total purchases charged is the accurate measure of the loss. It was not error for the district court to deny a deduction for the items returned.

AFFIRMED.

---

917 (5th Cir. 1994); <u>United States v. Holiusa</u>, 13 F.3d 1043 (7th Cir. 1994); and <u>United States v. Buckner</u>, 9 F.3d 452 (6th Cir. 1993). We note that, although the defendants in these cases were sentenced under section 2F1.1, this case is different because the Balds are not charged with a Ponzi scheme, fraudulent loan applications, or fraudulent financial disclosures to a bank. These crimes all contemplate, by their nature, the payment of some money to the victim; in <u>some</u> instances, the perpetrator is using fraud just to obtain a contract he means to perform fully.

Defendants also make a second, related argument: that a different part of the commentary to section 2F1.1 should apply. Application note 7(b) specifically deals with valuation of loss in fraudulent loan application and contract procurement cases whereby "the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan." U.S.S.G. § 2F1.1, applic. n. 7(b). But, use of someone else's credit card, as in this case, cannot reasonably be considered a loan or contract procurement; thus, this application note is not relevant to determining the amount of loss.