**UNITED STATES of America, Appellant,**

v.

**Ramon Wilberto ABREU–CABRERA, Defendant–Appellee.**

**No. 1071, Docket 94–1429.**

United States Court of Appeals, Second Circuit.

Argued March 17, 1995.

Decided Aug. 23, 1995.

David R. Homer, Asst. U.S. Atty., N.D.N.Y., Albany (Thomas J. Maroney, U.S. Atty., Kimberly M. Zimmer, Asst. U.S. Atty., of counsel), for appellant.

Frederick P. Korkosz, Albany, NY, for appellee.

Before: OAKES, CARDAMONE, and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal requires us to construe the meaning of Rule 35(c) of the Federal Rules of Criminal Procedure, which governs corrections of sentencing errors. That Rule provides: "The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." The very language of the Rule, we think, makes clear that a sentencing court is not authorized to change its mind as the winds change, veering away in a trice from a sentence it has correctly imposed, simply because further reflection has caused it to have a change of heart.

The United States (government or appellant) appeals from the sentence imposed at resentencing on defendant Ramon Wilberto Abreu–Cabrera by the United States District Court for the Northern District of New York (Scullin, J.), following defendant's conviction for reentry into the United States after deportation. The government's principal contention is that the district court, by departing downward from the sentencing guidelines, acted beyond the scope of Rule 35(c) when it purportedly "corrected" Abreu–Cabrera's previously imposed sentence. Appellant asks us to vacate the new sentence and reinstate the original sentence imposed on defendant. We reverse and remand for reinstatement of the original sentence.

## BACKGROUND

On April 23, 1993 Abreu–Cabrera was deported from New York to the Dominican Republic. Six weeks later he was on an Amtrak train en route from Montreal, Canada, to New York City. During a routine customs train inspection at the Canada–United States border on June 3, 1993, defendant completed a customs declaration form and presented documents showing his identity to be Joseph Romero Figuero, a United States citizen. After initial questioning on the train, Immigration and Naturalization Service (INS) agents requested defendant to go with them to the INS office for further questioning. A search of defendant's luggage revealed a hidden compartment containing a U.S. Alien Registration Card and a passport in his real name. Abreu–Cabrera then admitted his identity, that he had been deported and had a criminal record. He told the agents he had purchased the false documents prior to his deportation.

Abreu–Cabrera was promptly indicted for reentry after deportation, in violation of 8 U.S.C. § 1326, and making a false statement, in violation of 18 U.S.C. § 1001. In October 1993 he pled guilty to the reentry charge. At Abreu–Cabrera's plea allocution, defense counsel alerted the district court to a dispute with respect to defendant's criminal past, relevant because § 1326 carries varying sentence enhancements depending on whether deportation follows a conviction for an aggravated felony or for a non-aggravated felony. The government contended that on Septem-

ber 15, 1988 Abreu–Cabrera had pled guilty in Massachusetts state court to unlawful possession with intent to distribute cocaine—an aggravated felony. Defendant maintained that he had actually pled guilty to a charge of simple possession—a non-aggravated felony. This drug conviction resulted in a one year sentence, of which three months were to be served and the balance suspended. The record reveals that on March 3, 1989 defendant's probation was revoked and he was ordered to serve the remainder of the one year sentence. Abreu–Cabrera returned to the Massachusetts criminal justice system in July 1990 when he pled guilty to two counts of extortion and attempt to commit a crime by extortion for which he received a two and one-half year sentence, six months to be served and the balance suspended.

At a sentencing hearing, held January 21, 1994, the district court determined that Abreu–Cabrera's prior conviction, according to the Massachusetts state court records, was for possession with intent to distribute. Relying on the presentence report prepared by the U.S. Probation Department, the sentencing court then noted the base offense level for Abreu–Cabrera's violation was eight. Because his deportation followed a conviction for an aggravated felony (the Massachusetts drug offense), the offense level was increased by 16. A three-level downward adjustment for acceptance of responsibility resulted in a total offense level of 21. This offense level, combined with a criminal history category of IV, eventuated in a guideline imprisonment range of 57 to 71 months. The district court sentenced Abreu–Cabrera to 57 months imprisonment, two years supervised release, and a $50 special assessment.

Four days later, on January 25, 1994, prior to the entry of judgment reflecting the orally imposed sentence, the district court issued an order stating it "may not have been apprised of and considered all relevant factors" in sentencing Abreu–Cabrera, "and therefore wishe[d] to consider correcting the sentencing pursuant to Rule 35(c) of the Federal Rules of Criminal Procedure." It noted this

could not be accomplished within the seven days after the imposition of sentence, as provided for by Rule 35(c), and therefore reserved the right to correct the sentence, if error was found.

In March 1994 defendant moved for reconsideration of his sentence, challenging both the finding that his prior conviction had been for an aggravated felony and the calculation of his criminal history category. The government filed papers in opposition. At the sentencing hearing held on July 15, 1994 the district court stated it was going to reconsider its sentence calculation under Rule 35(c), per its January 25 order.

At the hearing, the trial court determined its previous guidelines calculations were correct. However, it decided to depart downwardly from those guidelines pursuant to U.S.S.G. §§ 4A1.3 and 5K2.0, stating that "defendant received a statutory minimum for a single cocaine offense for an undisclosed amount," and that a departure was therefore warranted since his "conduct significantly differ[ed] from the norm." As further bases for downward departure, the sentencing court noted Abreu–Cabrera's deportation was three years after his drug conviction, he was attempting to reenter to rejoin his family, and there was little threat of recidivism. It concluded Abreu–Cabrera's criminal history was overrepresented and "horizontally" departed from a criminal history category of IV to III.[1] Based on a total offense level of 21 (unchanged) the guidelines imprisonment range was 46 to 57 months. The sentencing court then "vertically" departed and sentenced Abreu–Cabrera to 24 months imprisonment, two years supervised release and a $50 special assessment. This resentencing prompted the present appeal.

## DISCUSSION

### I Rule 35(c)

The government contends the district court lacked authority under Rule 35(c) to

---

1. If we accept the district court's resentencing as proper under Rule 35(c), the government does not challenge the horizontal departure pursuant to § 4A1.3. The record reflects that the finding of a small threat of recidivism resulted only in this departure. We do not therefore discuss it further.

resentence Abreu–Cabrera. According to it, that court's decision to depart downwardly from the sentencing guidelines does not constitute a correction of the type of arithmetical, technical, or other clear error envisioned by Rule 35(c). In addition, the government avers that the "correction" occurred after the expiration of the period provided for by the rule.

### A. History of Rule 35(c)

To understand the narrow scope of Rule 35(c) it is helpful to review its recent history. It was amended as part of the Sentencing Reform Act of 1984. *See United States v. Cook,* 890 F.2d 672, 674 (4th Cir.1989) (citing Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 215(b), 98 Stat. 1837, 2015). Prior to the effective date of that amendment, Rule 35 "allowed a sentencing judge substantial latitude to amend a sentence after the public sentencing hearing." *Id.* "The underlying purpose [of the amendment] was to impose on the new sentencing system a requirement that the sentence imposed in the public forum during the sentencing hearing would remain constant, immune from later modification." *Id.* at 674–75.

Under the amended version of Rule 35, effective November 1, 1987, a district court was granted authority to correct a sentence after remand from the court of appeals, Rule 35(a), and to reduce a sentence in response to a government motion due to a defendant's subsequent substantial assistance in investigations and prosecutions, Rule 35(b). Read literally, a district court no longer had the authority to correct its own sentencing errors, *sua sponte* or upon motion by the parties. *See United States v. Lopez,* 26 F.3d 512, 517 (5th Cir.1994); *United States v. Corey,* 999 F.2d 493, 495 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 574, 126 L.Ed.2d 473 (1993); *United States v. Fraley,* 988 F.2d 4, 6 (4th Cir.1993).

At least two circuits held that district courts retained the inherent power, notwithstanding the amended Rule 35, to correct obvious sentencing errors during the period in which any party could file a notice of appeal. *See United States v. Rico,* 902 F.2d 1065, 1067–68 (2d Cir.), *cert. denied,* 498 U.S.

943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *Cook,* 890 F.2d at 675. In *Cook,* the Fourth Circuit held that a district court had the power to correct *sua sponte* a sentence where it stated that a particular kind of sentence was to be imposed (incarceration followed by community confinement) and then imposed a different sentence (community confinement followed by supervised release) solely due to a misinterpretation of the sentencing guidelines. *See id.* at 674–75. The *Cook* court's holding was narrow, extending only to obvious mistakes. The court stated, "[t]he power of a district court to amend a sentence does not extend to a situation where the district judge simply changes his mind about the sentence. Nor should [the decision] be interpreted as an attempt to reenact former Rule 35 by judicial edict." *Id.* at 675.

Adopting the Fourth Circuit's rationale, we upheld a resentencing where the district judge stated his intention to abide by the plea agreement but mistakenly imposed a different sentence. *See Rico,* 902 F.2d at 1067–68. We noted that a contrary rule, requiring an appeal and remand in order to impose the same sentence that would have been imposed by the district court correcting its own error, would be a waste of judicial resources. *See id.* at 1068.

In 1991 Rule 35 was again amended. Rule 35(c) was added and, as quoted earlier, contained the seven-day window for the sentencing court to correct "a sentence that was imposed as a result of arithmetical, technical, or other clear error." The addition of subsection (c) was intended to adopt, in part, a suggestion from the Federal Courts Study Committee to amend the rule "to recognize explicitly the ability of the sentencing court to correct a sentence imposed as a result of an obvious arithmetical, technical or other clear error, if the error is discovered shortly after the sentence is imposed." Fed. R.Crim.P. 35 Advisory Committee's Note. According to the Advisory Committee, Rule 35(c) "in effect codifies the result in [*Cook* and *Rico* ] but provides a more stringent time requirement." *Id.*

## B.  *Scope of Rule 35(c)*

Turning to the instant case, the district court's order referred to its wish "to consider correcting the sentence pursuant to Rule 35(c)." Although recognizing at Abreu–Cabrera's resentencing hearing that the presentence report's recommendations that he had relied upon in defendant's original sentencing had been correct, the sentencing judge concluded he had erred in fixing defendant's original sentence. The purported error was applying the 16–level increase, called for by the guidelines due to Abreu–Cabrera's deportation after commission of an aggravated felony, in a fashion "so mechanical as to impose a draconian result." The district judge then proceeded to review the underlying facts of the aggravated felony and defendant's other circumstances, deciding that downward departure from the sentencing guidelines was warranted. The result was the new sentence of 24 months.

■ Such correction is clearly outside the scope of the rule. By its terms Rule 35(c) permits corrections of "arithmetical, technical, or other clear error[s]." The rule:

> is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a) [requiring remand when the sentence is imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or is unreasonable]. The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or *for the court simply to change its mind about the appropriateness of the sentence.* Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

Fed.R.Crim.P. 35 Advisory Committee's Note (emphasis added); *see also Lopez,* 26 F.3d at 520; *United States v. Portin,* 20 F.3d 1028, 1029–30 (9th Cir.1994) (per curiam).

Whatever error was perceived by the sentencing court certainly could not be categorized as an arithmetical or technical error; nor could it be "other clear error." The failure to make a downward departure at Abreu–Cabrera's initial sentencing did not constitute an obvious error or mistake that would have resulted in a remand by this Court. Defendant's original sentence was not illegal, nor was it the result of an incorrect application of the guidelines or unreasonable. Since Abreu–Cabrera's resentencing represented nothing more than a district court's change of heart as to the appropriateness of the sentence, it was accordingly not a correction authorized by Rule 35(c).

So holding accords with rulings of our sister circuits. In *Lopez* defendant was given a downward departure at his initial sentencing due to his agreement to testify for the government. When he later refused to testify, the government moved for resentencing without the downward departure and the district judge agreed. The "mistake" claimed by the sentencing court was the granting of a downward departure based on the erroneous assumption that defendant would fulfill his agreement to cooperate and testify for the government. The Fifth Circuit held the alleged error was not within the scope of Rule 35(c) and ordered the reinstatement of the original sentence. *See* 26 F.3d at 520–21; *accord Portin,* 20 F.3d at 1030 (district court correcting sentencing error as to terms of imprisonment not free to reconsider fines where no error occurred with respect thereto); *Fraley,* 988 F.2d at 7 & n. 4 (where no error in original sentence but court merely changed its mind, correction under Rule 35(c) improper).

Although discussing a resentencing that occurred prior to the effective date of Rule 35(c), our decision in *United States v. Arjoon,* 964 F.2d 167 (2d Cir.1992), is informative. The district court reduced Arjoon's original sentence for embezzlement because on the same day the court had imposed a milder guidelines-mandated sentence on an unrelated defendant for a gun-trafficking violation, which the court viewed as a far more serious offense. We reversed, stating "[t]his plainly does not constitute the kind of 'obvious error'

which the district court has power to remedy, but instead constitutes a change of heart." *Id.* at 170.

■ The district court in the instant case changed its mind regarding the severity of Abreu–Cabrera's sentence. As a result of Congress' desire to provide finality to sentencing, *see* Fed.R.Crim.P. 35(c) Advisory Committee's Note, such second thoughts, no matter how well intentioned, are not the sort of error that Rule 35(c) was designed to remedy.

## C. Timeliness of the Correction under Rule 35(c)

The government suggests a second basis for rejecting Abreu–Cabrera's resentencing under Rule 35(c). The rule provides that the sentencing court may correct a sentence only within seven days of its imposition. Abreu–Cabrera's resentencing occurred almost six months after his original sentencing.

■ We have held, as have several other circuits, that the seven-day period provided for in Rule 35(c) is jurisdictional. *See United States v. Werber,* 51 F.3d 342, 348 (2d Cir. 1995); *Lopez,* 26 F.3d at 519 & n. 8; *United States v. Morillo,* 8 F.3d 864, 869 (1st Cir. 1993) (Rule 35(c)'s seven-day interval is an absolute limitation); *United States v. Daddino,* 5 F.3d 262, 265 (7th Cir.1993) (per curiam) (court's attempt to correct sentence two months later "falls well outside of the limited authority provided in Rule 35(c)"). In *Werber* we held that corrected sentences, imposed almost four months and over seven months after imposition of original sentences, were invalid because "outside the seven-day window of Rule 35(c)." *See* 51 F.3d at 348; *accord Lopez,* 26 F.3d at 520 (court lacked jurisdiction where resentencing occurred three months after original sentencing); *United States v. Fahm,* 13 F.3d 447, 454 (1st Cir.1994) ("Since the narrow window of opportunity allowed under Rule 35(c) closed [three months] before the district court reconsidered its original sentence ... the original sentence must be reinstated.").

According to Rule 35(c), the correction must be made within seven days of "the imposition of sentence." The district court's order assumed the seven-day period began running upon its oral pronouncement of Abreu–Cabrera's sentence and the parties have continued to so assume in their briefing of the timeliness of Abreu–Cabrera's resentencing. Yet the question of whether "imposition of sentence" refers to the oral pronouncement of a defendant's sentence or the docket entry of a written sentence (which was not done with respect to the oral pronouncement of Abreu–Cabrera's original sentence) is an unresolved question that has created a split among the courts of appeals. The Tenth Circuit has determined that the term "the imposition of sentence" refers to the oral pronouncement of sentence from the bench with the defendant present. *See United States v. Townsend,* 33 F.3d 1230, 1231 (10th Cir.1994). Alternatively, the Seventh Circuit interprets the phrase to refer to the date judgment enters. *See United States v. Clay,* 37 F.3d 338, 340 (7th Cir.1994); *cf. Fahm,* 13 F.3d at 453 (noting the First Circuit's dictum to that effect). Without deciding the issue, the Ninth Circuit has stated that the term is one of art "that generally refers to the time at which a sentence is orally pronounced," although it suggests the intention of the drafters is that the seven-day period commences upon the formal entry of judgment. *See United States v. Navarro–Espinosa,* 30 F.3d 1169, 1170–71 (9th Cir. 1994).

We believe the only pertinent information to be gleaned from the Advisory Committee Notes is that the seven-day limitation was meant to restrict the period in which corrections could be made to within the time for appealing a sentence. However, since a notice of appeal in a criminal case must be filed within ten days of the later of the entry of a judgment or entry of an order disposing of post-trial motions, *see* Fed.R.App.P. 4(b), this goal is achieved whether the period under Rule 35(c) commences upon oral pronouncement of sentence or formal entry.

■ This Court has assumed, without explicitly addressing the issue, that a sentence is imposed for purposes of Rule 35(c) on the date of oral pronouncement, rather than the date judgment is entered. *See Werber,* 51 F.3d at 345, 348 (noting that judgment was

entered on October 25, 1993, but stating defendant's sentence was "imposed" on October 22, 1993). We believe this interpretation best effectuates the intent of the rule's drafters—finality in sentencing.

After the oral imposition of sentence, the court and counsel are in as good a position to notice any "arithmetical, technical, or other clear error" as they would be after formal entry of written judgment. In the event such an error is only recognized later it can be cured by appeal and remand. If the error is only in the later written judgment, purely clerical errors may be corrected by the district court pursuant to Rule 36, and it is always the oral sentence that controls, *see id.* at 347. A contrary rule, interpreting the phrase to refer to the written judgment, would allow district courts to announce a sentence, delay the ministerial task of formal entry, have a change of heart, and alter the sentence—a sequence of events we believe to be beyond what the rule was meant to allow.

■ Abreu–Cabrera's oral sentence was originally pronounced on January 21, 1994. Defendant was resentenced on July 15, 1994, almost six months later. The sentencing court's January 25, 1994 order announcing its wish to consider correcting defendant's sentence did not extend that seven-day jurisdictional window. *Cf. Morillo,* 8 F.3d at 869 ("if a motion is timely made but not decided within the seven-day period, the judge's power to act under the rule subsides and the pending motion is deemed denied"). Hence, the district court lacked jurisdiction to resentence Abreu–Cabrera.

## II The Downward Departures

We pass to a brief discussion of the inappropriateness of the downward departure in this case even had there been authority to resentence defendant. The basis for downwardly departing from the guidelines was purportedly due to several reasons: the nature of Abreu–Cabrera's underlying aggravated felony conviction, the length of time between that conviction and his deportation, and defendant's purpose in attempting to reenter the United States, namely to visit his family. The government challenges each of these grounds, insisting none of them is a proper basis for departure.

■ We review *de novo* whether a particular factor is or is not an appropriate basis for departure, and subject the factual findings establishing the existence of such factor to the clearly erroneous standard of review. *See United States v. Haynes,* 985 F.2d 65, 68 (2d Cir.1993); *United States v. Alba,* 933 F.2d 1117, 1121 (2d Cir.1991). A sentencing court may depart from the guidelines if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." *United States v. Tropiano,* 50 F.3d 157, 162 (2d Cir.1995) (quoting 18 U.S.C. § 3553(b)); *see also* U.S.S.G. § 5K2.0. "Departure authority, though not designed to prevent a sentencing judge from exercising discretion, flexibility or independent judgment, is nonetheless a device for implementing the guideline system, not a means of casting it aside." *United States v. Joyner,* 924 F.2d 454, 460 (2d Cir.1991) (internal quotes & citation omitted). Therefore, departure is to occur only in unusual cases. *See Haynes,* 985 F.2d at 68. We examine each of the district court's reasons for departure.

### A. *Disparity Between the 16–Level Enhancement and the Seriousness of the Underlying Narcotics Offense*

■ Guideline § 2L1.2(b)(2) requires a 16–level enhancement when sentencing a defendant convicted of reentry after deportation if that deportation followed an aggravated felony conviction. That guideline defines an "aggravated felony" to include "any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2)." U.S.S.G. § 2L1.2, application note 7. Abreu–Cabrera's conviction for possession with intent to distribute cocaine meets the definition of "aggravated felony" and therefore the 16–level enhancement applies. The district court disagreed, believing that since defendant received a statutory minimum sentence for a single cocaine offense in an undisclosed amount departure was warranted.

Abreu–Cabrera was convicted of illegally reentering the United States in violation of 8

U.S.C. § 1326. Such violation generally carries a maximum penalty of two years incarceration. § 1326(a). Congress has nonetheless determined that such illegal reentry is a more significant offense when it occurs subsequent to a felony conviction. Thus, under § 1326(b)—as in effect at the time of Abreu–Cabrera's reentry—the maximum penalty is increased from two years to five years when deportation is preceded by a felony conviction (other than an aggravated felony), and to 15 years when deportation is preceded by a conviction for an aggravated felony. Congress recently increased the maximum periods of incarceration under § 1326(b) to 10 and 20 years, respectively. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, Title XIII, § 130001(b), 108 Stat. 1796, 2023.

The Sentencing Commission has implemented Congress' view of the increased seriousness of illegal reentry subsequent to a criminal conviction. Under U.S.S.G. § 2L1.2(b), if deportation followed a felony conviction, other than a violation of the immigration laws, the offense level is increased by 4 levels, and if an aggravated felony, by 16 levels. *See United States v. Campbell*, 967 F.2d 20, 24 (2d Cir.1992) ("[B]oth Congress and the Sentencing Commission have concluded that the fact that a defendant was deported subsequent to the commission of an aggravated felony is relevant to measuring the severity of the crime of reentry following deportation.").

Our decision in *United States v. Polanco*, 29 F.3d 35 (2d Cir.1994), the existence of which was known by the district court in its resentencing of Abreu–Cabrera, governs here. In *Polanco*, the defendant pled guilty to illegally reentering the country following his deportation as an aggravated felon, in violation of § 1326(b)(2), the same violation at issue in the instant case. Polanco's aggravated felony was a state conviction for the sale of five grams of cocaine to an undercover police officer, for which he was sentenced to six months imprisonment and five years probation. The presentence report included the 16–level mandatory enhancement pursuant to guideline § 2L1.2(b)(2). The district court found that guideline inapplicable be-

cause, it held, Polanco's prior conviction was not an aggravated felony under § 2L1.2(b)(2). It then sentenced Polanco to a suspended one year sentence. *See id.* at 36–37.

In vacating the sentence, we stated, "[b]ecause Polanco's felony conviction was for an offense punishable under the Controlled Substances Act, one of the statutes enumerated under section 924(c)(2), the offense rises to the level of 'aggravated felony' under section 2L1.2(b)(2) and 8 U.S.C. § 1326(b)(2) *regardless of the quantity or nature of the contraband or the severity of the sentence imposed." Id.* at 38 (emphasis added). We further stated that the guidelines "more than adequately account[ed] for the circumstances underlying the offense conduct." *Id.* at 38 n. 3. Thus, *Polanco* left no room for the district court to conclude that § 2L1.2 did not completely account for the circumstances of Abreu–Cabrera's drug offense.

It should further be observed that both the Sentencing Commission and Congress have shown themselves capable of modifying the definition of aggravated felony to exclude circumstances deemed less significant. *See* U.S.S.G. § 2L1.2, application note 7 (limiting crimes of violence that are aggravated felonies to those for which the term of imprisonment imposed is at least five years); 8 U.S.C. § 1182(c) (excluding from discretionary waiver of deportability those aliens convicted of one or more aggravated felonies for which a term of imprisonment of at least 5 years has been served); 8 U.S.C. § 1251(a)(2)(B)(i) (deportable aliens include those convicted of a narcotics offense, "other than a single offense involving possession for one's own use of 30 grams or less of marijuana").

■ The failure similarly to limit the category of drug trafficking crimes that call for the enhanced sentence for illegal reentry following deportation as an aggravated felon cannot be seen as inadvertent. Congress has spoken within its lawful authority and the Sentencing Commission has incorporated that legislative decision into the guidelines. Such legislative decision cannot be overturned by judicial edict. *See United States v. Maul–Valverde*, 10 F.3d 544, 546 (8th Cir. 1993) (departure from § 2L1.2(b)(2)'s 16–lev-

el enhancement when prior aggravated felony was too ancient to be used in calculating criminal history category improper because § 2L1.2(b)(2) counts all prior aggravated felonies no matter how ancient and Sentencing Commission's decision mirrored the governing statutes).

Other courts have taken the same categorical approach to determining predicate aggravated felony convictions for the sentence enhancement provided for under § 1326(b) and guideline § 2L1.2(b)(2). *See United States v. Lomas,* 30 F.3d 1191, 1193 (9th Cir.1994) (to determine whether state drug conviction is an aggravated felony under § 2L1.2(b), court looks only to the statutory definition and not the underlying factual circumstances of the crime), *cert. denied,* —— U.S. ——, 115 S.Ct. 1158, 130 L.Ed.2d 1114 (1995); *United States v. Frias–Trujillo,* 9 F.3d 875, 876–77 (10th Cir.1993) (aggravated felony includes burglary conviction even though nobody was home, no property was damaged and nobody was injured); *United States v. Rodriguez,* 979 F.2d 138, 140–41 (8th Cir.1992) (court need not look to underlying circumstances to conclude that commission of lascivious acts with a child is a crime of violence triggering 16–level enhancement); *cf. Taylor v. United States,* 495 U.S. 575, 600–02, 110 S.Ct. 2143, 2159–60, 109 L.Ed.2d 607 (1990) (adopting categorical approach to predicate offenses triggering the sentence enhancements under § 924(e) for armed career criminals).

In sum, the 16–level enhancement provided for in guideline § 2L1.2 applies regardless of the underlying facts of Abreu–Cabrera's drug trafficking crime, and downward departure based on a perceived disparity between the sentence enhancement and those facts was improper.

### B. *Deportation Following Conviction for an Aggravated Felony*

■ The second basis for downward departure was the three-year period between defendant's drug trafficking conviction and deportation. The sentencing judge did not explain why this was a mitigating factor. The three-year time period allowed Abreu–Cabrera to violate his parole, serve the remainder of his sentence, commit additional crimes and serve time in prison for those crimes. Guideline § 2L1.2, application note 6 defines "deported after a conviction" to mean "that the deportation was subsequent to the conviction, whether or not the deportation was in response to such conviction." Clearly the Sentencing Commission was concerned only with the sequence of the events, not their causation. The deportation of Abreu–Cabrera was preceded in time by a conviction for an aggravated felony. Hence, departure from the 16–level enhancement required by guideline § 2L1.2(b)(2) based on the time between the conviction and deportation was inappropriate.

### C. *Returning to Visit His Family*

■ The third basis for downward departure was the observation that Abreu–Cabrera attempted to reenter the United States to visit his wife and children. In extraordinary situations a sentencing court may consider family circumstances in departing from the guidelines. *See, e.g., Alba,* 933 F.2d at 1122. In this case no such extraordinary circumstances are present. Every deported alien may leave family behind. This factor alone, absent extraordinary circumstances, may not justify a downward departure from the guidelines.

### CONCLUSION

The district court improperly resentenced Abreu–Cabrera, beyond its limited authority to do so under Rule 35(c). We therefore vacate the resentence and remand to the district court for it to impose a sentence in accordance with the sentence it pronounced on January 21, 1994. *See Townsend,* 33 F.3d at 1231; *Lopez,* 26 F.3d at 523; *cf. Werber,* 51 F.3d at 349 (where resentencing under Fed.R.Crim.P. 36 held improper, corrected judgments vacated and original judgments reinstated).

Reversed, sentence vacated, and case remanded.