UNITED STATES of America, Appellee,

v.

Vincent DeMARTINO, aka Chickie, Defendant–Appellant.

No. 1533, Docket 96–1725.

United States Court of Appeals, Second Circuit.

Argued April 3, 1997.

Decided April 23, 1997.

Andrew Weissmann, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, David C. James, Peter A. Norling, Assistant United States Attorneys, Brooklyn, NY, on the brief), for Appellee.

George L. Santangelo, New York City (Santangelo, Santangelo & Cohen, New York City, on the brief), for Defendant–Appellant.

Before: OAKES, KEARSE, and ALTIMARI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Vincent DeMartino, convicted of a firearm offense in the United States District Court for the Eastern District of New York, Edward R. Korman, *Judge,* appeals from an order denying his motion under Fed.R.Crim.P. 36 for a correction of the written judgment of conviction, to conform that judgment to the sentence pronounced on him orally by the court at the sentencing hearing. The district court held that Rule 36 was inapplicable because the deviation of the written judgment from the oral pronouncement was not a clerical or technical error, but was an intentional change by the court because the oral pronouncement did not reflect the court's intention. On appeal, DeMartino urges that we direct the district court to enter written judgment in accordance with the sentence imposed orally. For the reasons that follow, we conclude that relief was not available under Rule 36, but that, since the judgment of conviction improperly deviated from the oral sentence, the written judgment should have been vacated pursuant to 28 U.S.C. § 2255. Because we conclude that the oral sentence too may have been flawed, we remand for resentencing.

## I. BACKGROUND

Following a jury trial in 1992, DeMartino, a convicted felon, was found guilty of possessing a firearm in violation of 18 U.S.C. § 922(g)(1). DeMartino possessed the firearm shortly after being released on parole in connection with a conviction for bank robbery; the possession violated the terms of his parole; and as a consequence, DeMartino was promptly reincarcerated to serve the remainder of his term for the robbery conviction. On April 23, 1993, DeMartino appeared before the district court for sentencing on his firearm offense.

At that hearing, as quoted in greater detail in Part II.A. below, the court was informed that the Sentencing Guidelines imprisonment range calculated in the presentence report ("PSR") was 51–63 months; but the court noted, with some approval, DeMartino's position that the proper Guidelines imprisonment range, taking into account various sections, was instead 15–48 months. (*See, e.g.,* Sentencing Transcript, April 23, 1993 ("Tr."), 4, 5, 22.) The court explored at length the question of whether and to what extent the firearm sentence should be imposed concurrently with the robbery/parole violation sentence, pursuant to which DeMartino was expected to be imprisoned for some six more years. (*See id.* at 5–26.) Ultimately, the court imposed a sentence of 48 months' imprisonment, stating as follows:

> I'm going to sentence the defendant to the custody of the Attorney General for a period of 48 months, the sentence to run consecutive with the sentence that the defendant is presently serving.

(Tr. 27.) The court stated that because of the circumstances of DeMartino's firearm possession, to wit, that

> almost immediately upon his release from jail he's not only possessing a gun, which he shouldn't possess in violation of the law, but he's basically joined an organized crime family and committed himself to engaging in the occupation of being a criminal,

it was sentencing DeMartino at the high end of what it "loosely characterize[d]" as "the appropriate guideline ranges." (Tr. 27–28.)

On the same day, however, the court signed a written judgment that stated, "*THE COURT IMPOSES A SENTENCE OF SIXTY–THREE MONTHS IMPRISONMENT, FORTY–EIGHT OF WHICH IS TO RUN CONSECUTIVELY TO THE SENTENCE HE IS CURRENTLY SERVING.*" Judgment dated April 23, 1993, entered on docket

on April 27, 1993 ("1993 Judgment") (emphasis in original). Notwithstanding that the written judgment's imposition of a 63–month term of imprisonment was inconsistent with the oral sentence of 48 months' imprisonment, DeMartino did not mention that deviation in his unsuccessful direct appeal from the 1993 Judgment.

In July 1993, less than three months after sentencing on the firearm offense, DeMartino was granted early parole on the robbery conviction. Because there was no longer any other sentence with which the firearm sentence could run concurrently, the Bureau of Prisons determined that DeMartino's firearm sentence would run for 63 months from April 23, 1993. In 1995, DeMartino's counsel wrote to the district court asking the court to inform the Bureau of Prisons that in fact, as pronounced orally, DeMartino's sentence was 48 months. The court wrote to defense counsel, stating that the prescribed Guidelines range was 51–63 months, that the court and the parties had assumed that DeMartino would serve several years more on his robbery conviction as a result of his parole violation, and that the principal focus of the hearing had been the extent to which the firearm sentence should be consecutive to the term to be served for the robbery conviction. The court stated that at the end of the proceedings

*I orally imposed a sentence of forty-eight months* to run consecutively to the sentence the defendant was then serving. *What I had meant to say was that I was imposing a sentence of sixty-three months,* the maximum permitted by the guidelines, of which forty-eights [*sic*] was to be served consecutively and fifteen months concurrently. The formal judgment of conviction, which was signed the same day and docketed on April 27, 1993, corrected this error and resulted in the imposition of a sentence which was understood by the parties to be the same sentence except that it reflected accurately the manner in which it was being imposed. The correction was clearly permitted by F.R.Crim. P., Rule 35(c). See *United States v. Abreu–Cabrera*, 64 F.3d 67 (2d Cir.1995). No objection was raised at the time and no appeal was taken.

While the subsequent and unanticipated decision of the Parole Board to parole the defendant on the bank robbery charge may now render significant the technical correction made in the judgment of conviction, it does not alter the fact that the sentence imposed is the one reflected there. Indeed, if I had anticipated that the defendant would be paroled on the bank robbery charge, I would have run the entire sentence of sixty-three months consecutively.

(Letter from Judge Korman to Andrew J. Weinstein dated September 12, 1995, at 1–2 (emphases added).)

In August 1996, DeMartino moved in the district court for a correction of sentence pursuant to Rule 36, contending that the written judgment impermissibly changed the sentence that had been imposed on him orally, and that even if the court had the power to increase his sentence, it could do so only in his presence. In a Memorandum and Order dated November 7, 1996 ("1996 Opinion"), the court denied the motion, stating in part as follows:

At a hearing on April 23, 1993, the defendant was sentenced orally to serve forty-eight months. This sentence was to be served consecutively to his parole violation sentence.... This was reduced to writing later that same day in the Judgment of Conviction, which sentenced the defendant to serve sixty-three months, forty-eight of which he would serve consecutively to the parole sentenced and fifteen of which he would serve concurrently with it.

. . . .

Because of the way the argument was framed [focusing principally on the extent to which the firearm sentence should run consecutively to the parole violation sentence], at the conclusion of the April 23 hearing I sentenced the defendant to 48 months consecutive service, inadvertently omitting mention of a period of concurrent service. Later that same day I remedied this oversight and reduced the defendant's sentence to writing in the Judgment of Conviction, which ordered the defendant to serve forty-eight months consecutively and fifteen months concurrently. This brought

the total sentence imposed, sixty-three months, within the range permitted by the Guidelines. Indeed, all the parties acknowledge that without such a correction, the sentence would have constituted a downward departure from the permitted range.

Nonetheless, all the parties understood that the Judgment of Conviction effectively imposed the same sentence as had been imposed orally at the April 23, 1993 hearing. At that time, given the defendant's representations that he would serve in excess of another sixty-three months for his parole violation, inclusion of a period of concurrent service in the Judgment of Conviction would not affect the defendant's ultimate release date.

1996 Opinion at 1–3. The court stated that as a result of DeMartino's unexpected early parole,

the defendant's forty-eight-month consecutive and fifteen-month concurrent sentence was effectively transformed into a sentence of sixty-three months consecutive. While this is more consecutive service than the parties anticipated at the time of sentencing, it was the same sentence that I would have imposed if I had known that the defendant would again qualify for parole on the bank robbery charge three months after sentencing.

*Id.* at 4. While stating that the oral sentence is generally controlling, the court ruled that it had power under Fed.R.Crim.P. 35(c) "to correct a clearly erroneous oral sentence, which is what the Judgment of Conviction accomplished" because the oral sentence did not conform to the Guidelines. 1996 Opinion at 5.

The court also ruled that its failure to have DeMartino present when it corrected the sentence was at most harmless error because DeMartino would not have argued against the total 63–month sentence, and if he had so argued on the ground that he might seek and receive early parole, the court would have imposed the 63–month sentence anyway. *See id.* at 6–7. The court concluded that

[t]he written judgment here, while technically increasing the sentence, was not un-

derstood by anyone to have any practical effect on it. Indeed, for this reason, the defendant's presence at the time the Judgment of Conviction was entered would not have had any practical effect on the ultimate sentence imposed.

*Id.* at 8. For similar reasons, the court suggested that DeMartino also would not be entitled to relief pursuant to 28 U.S.C. § 2255, reasoning that he could not show " 'a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " 1996 Opinion at 8 (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

This appeal followed.

## II. DISCUSSION

■ On appeal, DeMartino argues that the district court erred in denying his Rule 36 motion to conform the written judgment to the oral pronouncement of sentence. For the reasons that follow, we conclude that the district court erred in entering a written judgment that provided for a penalty greater than that imposed by the sentence announced orally; that in this case DeMartino was not entitled to relief under the Federal Rules of Criminal Procedure but should have been granted relief under 28 U.S.C. § 2255; and that DeMartino is not entitled to have the 1993 oral sentence embodied in a written judgment but is entitled to be resentenced.

### A. *The Validity of the Written Judgment*

Because a defendant has a constitutional right to be present when he is sentenced, *see, e.g., United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam), if there is a variance between the oral pronouncement of sentence and the written judgment of conviction, the oral sentence generally controls, *see, e.g., United States v. Werber,* 51 F.3d 342, 347 (2d Cir.1995); *United States v. Pagan,* 785 F.2d 378, 380 (2d Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986); *United States v. Marquez,* 506 F.2d 620, 622 (2d Cir.1974).

[I]t is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence. The written commitment order is mere evidence of such authority.

*United States v. Werber,* 51 F.3d at 347 (internal quotation marks omitted); *United States v. Marquez,* 506 F.2d at 622.

Although the district court in the present case believed it had the authority under Rule 35(c) to enter a written judgment that differed from the oral sentence, we have two difficulties with that ruling. First, even assuming that Rule 35(c) were applicable here, the court clearly erred in entering the written judgment, for in 1993, when DeMartino was sentenced, Rule 43 forbade a sentencing change pursuant to Rule 35 in the defendant's absence unless the change was a "reduction," Fed.R.Crim.P. 43(c)(4). Entry of an order in the defendant's absence increasing his sentence was impermissible, and indeed was error sufficiently fundamental to require the court to correct it *sua sponte.* *See generally Bartone v. United States,* 375 U.S. 52, 53, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963) (per curiam) ("error[ ] in enlarging the sentence in the absence of petitioner[ ] was so plain in light of the requirements of Rule 43 that it should have been dealt with by the Court of Appeals, even though it had not been alleged as error" (footnote omitted)).

Second, Rule 35(c) itself, which states that "[t]he court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error," Fed. R.Crim.P. 35(c), provides an authorization that is "very narrow," Fed.R.Crim.P. 35 Advisory Committee Note (1991) ("Advisory Committee Note"). Rule 35(c) authorizes correction "only [of] ... obvious error[s]," and was not meant to allow the district court "to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines," or "to reconsider the application or interpretation of the sentencing guidelines," or "simply to change its mind about the appropriateness of the sentence." Advisory Committee Note; *see, e.g., United States v. Abreu–Cabrera,* 64 F.3d 67, 71–73 (2d Cir.1995). As we noted in *Abreu–Cabrera* a district court's "second thoughts" with regard to the severity of the defendant's sentence, "no matter how well intentioned, are not the sort of error that Rule 35(c) was designed to remedy." 64 F.3d at 73.

We note that Rule 36 too provides a limited avenue for correction of a judgment, permitting the court, upon appropriate notice, to correct a judgment's "[c]lerical mistakes" and errors arising from "oversight" or "omission." Fed.R.Crim.P. 36. But Rule 36, like Rule 35(c), does not authorize the court to amend the oral sentence itself or to modify the written judgment to effectuate an intention that the court did not express in its oral sentence. *See, e.g., United States v. Werber,* 51 F.3d at 343, 347.

In the present case, it undisputed that the court's clearly articulated oral sentence imposed a total of 48 months' imprisonment and that its written judgment differed from the oral sentence by providing for a sentence totaling 63 months. Further, as the district court itself noted, the written judgment thus "increas[ed] the sentence," 1996 Opinion at 8; the resulting "forty-eight-month consecutive and fifteen-month concurrent sentence was effectively transformed into a sentence of sixty-three months consecutive," *id.* at 4; and "this is more consecutive service than the parties anticipated at the time of sentencing," *id.* Though the court characterized its change as "technical[ ]," *id.* at 8, the record of the oral sentencing does not reflect any intent on the part of the court to impose on DeMartino a sentence of 63 months, and we cannot agree that an amendment that changed the total term of imprisonment from 48 months to 63 months was merely a "technical" change of the sort Rule 35(c) authorizes.

Nor can we conclude that the written judgment was authorized under Rule 35(c) as the correction of a "clear error." Although the court and the government posit that the 48–month sentence was a clear error because it constituted an illegal departure from the Guidelines range of 51–63 months, the sentencing hearing transcript leaves unclear how the court arrived at 48 months. Prior to the

hearing, DeMartino's counsel had sent the court a letter arguing that the proper "incremental consecutive" sentence under the Guidelines was 15–48 months. (Letter from Michael S. Ross to Judge Korman dated March 24, 1993, at 5.) At the hearing, the court stated:

> I basically agree, although I'm willing to listen to you Mr. Weissmann, with Mr. Ross' analysis of what the, how these guidelines should be calculated.... I'm now referring to Mr. Ross' letter of March 24th, 1993. It seems to me to make, you know it rationally, it seems to me to be a reasonable way of calculating what the guidelines are and it's also consistent with what I believe to be the language of the guidelines.

(Tr. 4.) Although the district court was then advised by Assistant United States Attorney ("AUSA") Weissmann that the Guidelines range recommended by the PSR was 51–63 months, it is not clear what determination the court finally made as to the proper range:

> THE COURT:....[T]he guidelines in this case as they've been calculated in the pre-sentence report are 51 to, what is it,
>
> MR. WEISSMANN: 63 I believe.
>
> THE COURT: 51 to 63 months. It, you know his, the fact that he was in possession of the gun has already resulted in his violation of probation and he['s] doing [an] additional period of time. I mean that's why he's in jail now serving another whatever we decided it was, I forget the precise number of additional years he['s] gonna serve. That's as a result of his possession of the gun. And then, where, if I sentence him consecutively, using the additional range of 15 to 48 months, that is in addition to that. I don't know how you could say that it ignores the fact that he committed the crime when he was on probation. I mean, he's being penalized essentially twice.
>
> MR. WEISSMANN: What I, what I don't—
>
> THE COURT: Once is for, once is for the violation of probation for which he serves the additional sentence and then if I sentence him consecutively to even near

the 15 to 48 is close to the 51 to 63, at least the 48 is close to the 51. And, the 51 to 63 takes into account the fact that he committed this crime while he was on parole and within two years after his release.

(Tr. 5–6.) After further discussion of the 15–48 month range, the AUSA stated that he did not understand

> the logic at arriving at those figures. Now if you're telling me that you have independently concluded that an appropriate sentence in this case should be, let's say 36 months and it should be consecutive, that's something the Court has discretion to determine. But what my dispute is with the analysis that has reached a range of 15 to 48 months because I don't see anywhere in the guidelines that justifies having picked those two numbers.

(Tr. 20.) Shortly thereafter, the court said

> Look, let me end the discussion. I think the guideline range that's proposed is reasonable. The incremental 15 to 48 months to run consecutively is a reasonable addition to the sentence that he's already doing as a result of similar conduct. It strikes me that what Mr. Ross has done is a reasonable way of dealing with it. I don't know why the guidelines don't deal with it any more than they do other than that they just wanted to leave it to my complete discretion....

(Tr. 22.) Thereafter, the court announced the sentence of 48 months (Tr. 27), "loosely characteriz[ing]" that sentence as within "the appropriate guideline ranges" (Tr. 28).

Given the court's final characterization of the sentence, the discussion that preceded it, and the fact that the court never stated at the hearing that it determined the applicable Guidelines range to be 51–63 months, we cannot say that the court did not arrive at its 48–month sentence "through the exercise of the court's discretion with regard to the application of the sentencing guidelines," Advisory Committee Note. It may be that the court *sub silentio* accepted the government's view that the applicable range was 51–63 months; but in light of the record, we have no assurance that the written judgment's increase of the sentence to 63 months did not

represent an impermissible "reconsider[ation of] the application or interpretation of the sentencing guidelines," or "simply [the court's] change [of] mind about the appropriateness of the sentence," *id.* Accordingly, we conclude that the written judgment's change of sentence was outside the scope of Rule 35(c).

In sum, the written judgment's increase in DeMartino's sentence was not a "technical" change; and even if the 48–month sentence was not permissible, either as an allowable interpretation of the Guidelines or as a departure, it was not a "clear error" whose correction is permitted under Rule 35(c). We conclude that the written judgment was invalid and that, as between the written judgment and the oral sentence, the oral sentence was controlling.

B. *The Relief to Which DeMartino Is Entitled*

■ The invalidity of the written judgment does not mean that DeMartino was automatically entitled to the granting of his Rule 36 motion to conform the written judgment to the oral sentence. As discussed above, Rule 36 allows the court "at any time" to correct a judgment's "[c]lerical mistakes" and errors arising from "oversight" or "omission." Fed.R.Crim.P. 36. Had the district court simply inadvertently mistranscribed the oral sentence, Rule 36 would have been the proper mechanism for relief. However, the Rule "covers only minor, uncontroversial errors," *United States v. Werber,* 51 F.3d at 347, and the terms of the written judgment in the present case resulted not from a noncontroversial clerical mistake or oversight but rather from a deliberate change by the court in the terms of confinement from those announced. Accordingly, Rule 36 was not applicable.

■ The impermissible deviation of the written judgment from the oral sentence, however, was a "clear error." That error could have been corrected by the court pursuant to Rule 35(c) within seven days of the imposition of sentence. Although the court has no jurisdiction beyond that period to act under Rule 35(c), such an error may be corrected thereafter pursuant to a petition under 28 U.S.C. § 2255. *See* Advisory Committee Note ("Rule 35(c) and § 2255 should thus provide sufficient authority for a district court to correct obvious sentencing errors."). Although DeMartino, asked whether he wished to proceed under § 2255, adhered to his erroneous view that he was entitled to relief pursuant to Rule 36, the district court should have treated DeMartino's Rule 36 motion as a petition under § 2255, for, as discussed in Part II.A. above, the court's entry, in DeMartino's absence, of a written judgment that increased the sentence imposed orally was an error that required correction despite procedural flaws in his request for relief. *See generally Bartone v. United States,* 375 U.S. at 53, 84 S.Ct. at 22. Accordingly, in the exercise of our supervisory powers, *see id.* at 54, 84 S.Ct. at 22–23, we will treat the district court's order denying the Rule 36 motion as the denial of a § 2255 petition.

■ Viewing DeMartino's application as one under the proper procedural provision, we consider finally the nature of the relief to be granted. DeMartino argues that he is entitled to entry of a written judgment reflecting the oral sentence. The government opposes, arguing that the oral sentence was impermissible because it represented a departure from the Guidelines. Given the present record, we accept neither position. As indicated in the preceding section, we view the oral sentence as highly problematic because it is unclear whether the court simply exercised its discretion with regard to the application of the sentencing guidelines to reach the 48–month sentence, or whether it determined *sub silentio* that the applicable range was 51–63 months and imposed the 48–month sentence as a departure. Nor is it clear that a departure to 48 months would necessarily have been impermissible. (*See, e.g.,* Tr. 20 (AUSA Weissmann: "the Court has discretion" to find appropriate a sentence of "let's say 36 months").)

What is clear, however, is that a departure cannot properly be granted without an explanation adequate to permit meaningful appellate review, *see* 18 U.S.C. § 3553(c)(2) (1994) (any departure must be supported by a clear articulation on the record of the specific

grounds underlying it), and that there was no such explanation here. In light of the lack of clarity in the record as to how the court arrived at its 48–month sentence, we decline to order that the oral sentence that was imposed be embodied in a written judgment. Given our "statutory authority to 'direct the entry of such appropriate judgment, decree, or order, [and to] require such further proceedings to be had[,] as may be just under the circumstances,'" *United States v. Burd,* 86 F.3d 285, 288 (2d Cir.1996) (quoting 28 U.S.C. § 2106), and given our broad supervisory authority, *see, e.g., Bartone v. United States,* 375 U.S. at 54, 84 S.Ct. at 22–23, we instead remand for the district court to resentence DeMartino in the presence of the court, to give an explanation for its sentence if it chooses to depart from the Guidelines range it determines is applicable, and to enter a written judgment in accordance with whatever sentence it imposes orally.

### CONCLUSION

We have considered all of the arguments of both parties on this appeal and, except to the extent indicated above, have found them to be without merit. The order and 1993 Judgment of the district court are vacated, and the matter is remanded for proceedings not inconsistent with this opinion.