### UNITED STATES of America

v.

### Seyed Amin Ghorashi SARVESTANI, Defendant.

### No. 13 Cr. 214(PGG).

United States District Court, S.D. New York.

Signed Jan. 22, 2014.

Rachel Peter Kovner, United States Attorney Office, New York, NY, for United States of America.

William Charles Silverman, Greenberg Traurig, LLP, New York, NY, for Defendant.

1. As a result of 2002 amendments, paragraph (c) of Rule 35 became paragraph (a). *See* Fed. R.Crim.P. 35, Advisory Committee's Note, 2002.

## ORDER

PAUL G. GARDEPHE, District Judge.

On May 8, 2013, Defendant pleaded guilty to conspiracy to violate the International Emergency Economic Powers Act (IEEPA), in violation of 18 U.S.C. § 371. On August 14, 2013, this Court sentenced Defendant to thirty months' imprisonment and a $100,000 fine. (*See* Dkt. No. 25) On August 28, 2013, Defendant moved, pursuant to Federal Rule of Criminal Procedure 35(a), for correction of his sentence on the ground that it "was, in part, based on the erroneous⸳allegation that the Defendant was conspiring to trans-ship U.S. manufactured parts that control satellites." (Dkt. No. 34–1 at 1) For the reasons set forth below, Defendant's motion will be denied.

 As an initial matter, this Court lacks jurisdiction to correct Defendant's sentence under Rule 35(a). Under Rule 35(a), "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed.R.Crim.P. 35(a). Under Rule 35(c), the fourteen-day period begins to run upon "the oral announcement of the sentence." Fed. R.Crim.P. 35(c). The Second Circuit "ha[s] held, as have several other circuits, that the [time] period provided for in Rule 35 [ (a) ] is jurisdictional."[1] *United States v. Abreu–Cabrera*, 64 F.3d 67, 73 (2d Cir.1995). Accordingly, a district court lacks jurisdiction to correct a sentence after the fourteen-day period set forth in Rule 35(a) has expired, even where the motion seeking relief is timely filed. *See United States v. Higgs*, 504 F.3d 456, 458–59 (3d Cir.2007) ("[T]he seven-day limit in [Rule 35(a) ] does not apply to counsel's motion. It is expressly in terms of the District Court's action.");[2] *see also United States v. Werber*, 51 F.3d 342, 348 (2d Cir. 1995) ("Because the district court modified the defendants' original sentences more than seven days after they were imposed, the court had no jurisdiction to enter the corrected judgments under Rule 35[ (a) ]."). Here,

2. In 2009 amendments, the time period set forth in Rule 35(a) was increased from seven days to fourteen days. *See* Fed.R.Crim.P. 35, Advisory Committee's Note, 2009.

because more than fourteen days have passed since the Court's oral announcement of sentence, this Court lacks jurisdiction to correct Defendant's sentence under Rule 35(a).

Even if this Court had jurisdiction to correct the Defendant's sentence, his motion would fail on the merits. The Second Circuit has instructed that Rule 35(a) "is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action...." *Abreu–Cabrera*, 64 F.3d at 72 (quoting Fed. R. Crim. P. 35, Advisory Committee's Note, 1991); *see, e.g., United States v. Donoso*, 521 F.3d 144, 149 (2d Cir.2008) (district court "properly relied on Rule 35(a) to recall [the defendant]'s case and ... correct [the] sentence" where the court "did not have the authority to direct that [the defendant]'s federal sentence run consecutively to his state sentence"); *United States v. De-Martino*, 112 F.3d 75, 81 (2d Cir.1997) (district court's "impermissible deviation of the written judgment from the oral sentence ... was a 'clear error' [that] could have been corrected ... pursuant to Rule 35(c)...."); *United States v. Waters*, 84 F.3d 86, 90 (2d Cir.1996) (district court "properly exercised its authority to correct its error ..., pursuant to Rule 35(c)[,]" where the court "fail[ed] to consider [the policy statements in Chapter 7 of the Guidelines] when sentencing [the defendant] for violating the terms of his supervised release").

Defendant argues that "[t]his Court's sentence was, in part, based on the erroneous allegation that the Defendant was conspiring to trans-ship U.S. manufactured parts that control satellites." (Dkt. No. 34–1 at 1) As an initial matter, this Court did not find that Defendant had shipped parts to Iran that "control satellites." Instead, the Court stated that "some of the equipment at issue here *has a role* in monitoring, positioning, and controlling satellites and satellite antennas." (Sentencing Transcript ("Sent. Tr.") at 24) (emphasis added).[3]

■ In any event, the Court's sentence was based on far more than the nature of the equipment the Defendant provided to Iran. In imposing a thirty-month sentence, the Court noted, *inter alia*, the level of deception employed by the defendant, the intentional nature of his acts, his central role in the offense, the fact that he engaged in this criminal exporting activity for a number of years, the fact that he sold hundreds of thousands of dollars' worth of U.S.—made equipment to Iran, his high level of sophistication, and the need for the sentence imposed to provide general deterrence:

> Because there is a trade embargo in place that prohibits the sale of most U.S. made goods to Iran, the U.S.[-]made equipment here was shipped through intermediary destinations such as Dubai, Malaysia, Hong Kong, and elsewhere, in order to obscure the goods' true destination. The defendant's companies did millions of dollars of transactions with Iranian companies over many years. And a percentage, not insignificant percentage, of that business involved the sale of U.S.-made products, including electronic equipment and including, specifically, the satellite-related equipment at issue here.
>
> The defendant is a highly sophisticated international businessman. Indeed, his counsel has pointed out this morning [that] one of the defendant's companies had as much as $200 million in revenue in 2011, alone. There is also no doubt that the defendant was well aware of the laws prohibiting the sale of U.S. made goods to

---

**3.** The Government discusses the beacon receivers and tracking controllers supplied by Defendant in a September 26, 2013 letter: "[B]eacon receivers are components of a satellite system that are used to receive positioning information from an orbiting satellite and then use that information to determine the optimal position for ground-based antennae to best communicate with the satellite. Tracking controllers are used to position the ground-based antennae once this optimal position is determined. Therefore, while these parts do not actually control the orbiting satellite itself, the parts are critical in monitoring and positioning antennae used in satellite communications." (Govt. Sept. 26, 2013 Ltr. (Dkt. No. 49) at 1–2). This description of the role of beacon receivers and tracking controllers is consistent with the account set forth by Defendant's expert. *See* Def. Br. (Dkt. No. 28–2 at 3).

Iran. Indeed, in 2009, one U.S. supplier explicitly warned the defendant, in writing, to ensure that he complied with all U.S. export controls.

Instead, the defendant instructed his employees to disguise the fact that his employees were selling this merchandise to Iran. He warned his employees to be careful in relaying inquiries about the merchandise from the Iranian buyers to the U.S. suppliers. They were told to, quote "be careful about this subject" unquote, to address the queries by telephone, and to never use email.

As a result of the defendant's conduct, his employees lied to U.S. customs inspectors as to the ultimate destination of the merchandise.

There is also evidence that the defendant was kept apprised of the progress of the illegal shipments, and that he monitored the illegal shipments.

The defendant's conduct took place over a number of years. Why the defendant engaged in this conduct, that he knew to be illegal, is largely a mystery. He is a millionaire many times over. . . .

I conclude that the defendant engaged in extremely serious criminal conduct. The trade embargo against Iran reflects the fact that it is a nation that actively supports terrorism. The trade embargo has been a critical element in the international community's efforts to pressure Iran to end its support of terrorism.

Here, this defendant knowingly and intentionally chose to violate U.S. law designed to enforce the trade embargo. He took steps to actively conceal that violation and to mislead U.S. customs inspectors. . . .

[I]ntentional criminal conduct of this sort, committed by a highly sophisticated businessman, cannot be condoned. The sentence imposed must be sufficient to serve the objective of general deterrence. The message cannot go out that the U.S. trade embargo against Iran can be violated without fear of serious consequences. . . .

At the end of the day, what we have is someone who was highly sophisticated, was warned of the law—in writing—and for reasons that we don't know, chose to disregard it.

I have no doubt that this experience is likely sufficient to deter Mr. Sarvestani from future violations of the law. But, I have to be aware of my responsibility to communicate to others who may be now violating the law, or who may be considering violating the law, that they will receive serious consequences if their violation of the law is detected.

In my judgment a sentence of 10 months is not sufficient to serve the objective of general deterrence, and that is why I have decided that a longer sentence is necessary.

(Sent. Tr. at 22–24, 27, 30) The Court went on to sentence the Defendant to thirty months' imprisonment.[4]

In sum, this Court's sentence did not turn on the mistaken view that the Defendant had sold equipment to Iran that is used to control satellites. Accordingly, even if this Court had jurisdiction to correct the Defendant's sentence under Rule 35(a), he would not be entitled to such relief.

Defendant's motion for correction of sentence under Fed.R.Crim.P. 35(a) is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 28).

SO ORDERED.

---

4. The Guidelines recommended a sentence of 57 to 60 months' imprisonment. (Sent. Tr. 26) In imposing a sentence of 30 months' imprisonment, the Court granted a variance based on case law submitted by defense counsel demonstrating that many similarly situated defendants had received sentences "shorter than the guidelines range applicable here." (*Id.* at 27)